NEWTON A. K. BUGBEE, COMPTROLLER, ETC., APPEL-
LANT, v. KARL G. ROEBLING AND ANOTHER, EXECU-
TORS, RESPONDENTS.

Submitted March 22, 1920—Decided June 21, 1920.

To ascertain the clear market value of the taxable transfer under
the Transfer Tax act the amount of the federal tax must be
deducted.

On appeal from the Supreme Court affirming the Vice-
Ordinary.  The facts are stated in the opinion of the Vice-
Ordinary.

For the appellant, *John R. Hardin.*

For the respondents, *Scott Scammell* and *Charles DeF.
Besore (Herbert Noble,* of New York, on the brief).

The opinion of the court was delivered by

SWAYZE, J.  The question in this case is somewhat narrower
than those dealt with by the learned Vice-Ordinary and ably
discussed by counsel.  No question arises as to priority of the
lien for taxes between the federal inheritance tax and the state
transfer tax.  The question is simply the proper construction
of the New Jersey statute as amended in 1914.  *Pamph. L.,*
*p.* 267.  The state contends that the clear market value on
which the rate is to be calculated is the clear market value of
the whole estate;  the executors that it is the clear market
value of what passes to the beneficiaries, subject to the statu-
tory exemptions.  It must be conceded that if the contention
of the state is correct, the beneficiaries are compelled to pay as
tax the statutory percentage on the value of assets that are
subject to the lien of the federal government which is para-
mount to any claim of the beneficiaries.  In other words, as
argued by counsel, the state tax to that extent is a tax upon a

tax. The difficulty cannot be avoided by treating the federal tax as an estate tax and the state tax as a succession tax. Disguise the situation as we may by the use of different names, we cannot avoid the fact, which must be painfully real to the legatees, that the same property bears a double burden. If each tax were fifty per cent. it would not help the legatees to be told that one tax was on the estate and the other on the succession; the estate and the succession would both be deprived of beneficial value to the legatees.

In this, as in all other cases of statutory construction, we start with the fundamental assumption that the legislature means to be just. It needs no argument to prove the injustice of double taxation. The legislature certainly had no such result in mind when the act of 1909, or the amendment of 1914, was passed. At those times there was no federal inheritance tax. It is true, therefore, that the injustice, if there be injustice, is due to the subsequent enactment of the act of congress and equally true that the act of congress is the act of a distinct sovereignty. As to the national government, the state tax is no tax at all; as to the state government, the federal tax is no tax at all. *Blackstone* v. *Miller,* 188 *U. S.* 189. The injustice of the double taxation would result from the double allegiance due from citizens to the two different governments under which we live. This double allegiance was as well known to the members of the legislature as it was to other citizens, and the possibility of a federal inheritance tax must have been within their contemplation. Such taxes had only ten years prior to the present act been imposed by congress to meet the expenses of the Spanish war. We must assume that the legislature not only desired to enact a just statute, which should be just for the time being, but also a statute which could not be made an aid to injustice to citizens of New Jersey at the will of another sovereign, though that sovereign were the United States. Examining the act with these considerations in mind, we have no difficulty in holding that the legislature used language to secure a just result. If we stopped with the first paragraph of section 1, we should,

indeed, have difficulty. That imposes a tax upon the transfer of any property of the value of $500 or over to persons or corporations in certain enumerated cases. We had already decided that the legislature meant by the act of 1909 to reach all transfers from a decedent to his successors, including the transfer to an executor or administrator of a non-resident decedent of property having its *situs* in New Jersey. This right of the executor or administrator to succeed to New Jersey assets was the creature of our law, and came therefore within the well-established right of the state to impose conditions. As we said in *Carr* v. *Edwards,* 84 *N. J. L.* 667, the transfer tax on the succession of the executor or administrator was necessary to make sure that the rate of taxation in case of non-residents should equal the rate imposed in the case of resident decedents, since in the former case legacies were not taxable as such because created by foreign law. *Neilson* v. *Russell,* 76 *Id.* 655. Other provisions were inserted to prevent the rate in case of non-residents exceeding the rate in the case of residents. *Carr* v. *Edwards, supra* (at *pp.* 669, 670). The legislature was striving to be just and treat resident and non-resident alike. For the same purpose it provided that all taxes imposed by the act should be at the rate of five per centum upon the "clear market value of such property." This must mean the clear market value of the transfer to the executor or administrator. It does not mean the clear market value of the assets free and clear of all liens; it means the clear market value of the transfer in the condition in which it comes to the executor or administrator. Prior to the act of congress, the transfer was not burdened with a federal lien; afterwards it was. No one could properly say that the clear market value of the transfer to the executor the day before the act of congress was the same as the clear market value of the same assets transferred the day after the act, subject to the lien of the federal tax. The property comes to the executor or administrator already burdened with the federal lien. The title of the executor accrues at the decedent's death; the title of the administrator dates only from the grant of his letters (1 *Wms.*·

*Ex.* 629), even though by a fiction it relates back to the time of death. In either case the lien of the federal tax is already fixed. Mr. Justice White, speaking of the act of 1898, said, in *Knowlton* v. *Moore,* 178 *U. S.* 41 (at *p.* 49) : "What it taxes is not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death." The tax becomes a lien at that instant. We need not indulge in metaphysical niceties as to whether the cessation of the decedent's interest by death is anterior to the title acquired by the executor. It would be more natural to say that for this purpose a perceptible time elapses as it necessarily elapses in the case of an administrator; it is, however, quite enough to say that the two events are simultaneous and that the executor never has or can have a title free of the federal tax. The result is, that to ascertain the clear market value of the taxable transfer, the amount of the federal tax must be deducted.

This view makes the act of 1909 operate the same in all cases. We are not met by the difficulty put by counsel; that to deduct the federal tax is to put the taxing power of the sovereign state at the mercy of the federal government, which can decrease the state's revenues by increasing its own tax. The decrease in the state's revenue comes from the desire of its legislature to be just and not tax transfers above the value. That value is, of course, at the mercy of the federal government, as the value of all property is, but we must assume that the latter is as anxious as the state government to be just. It will be time enough to deal with the limitations on the taxing power when the federal government attempts to use that power to cripple or destroy the state governments. That time is not yet.

Our view is supported also by the method of ascertaining the amount of the tax. That amount, and in the present case even the percentage at which it shall be calculated, depends on the amount received by each beneficiary and the nearness of his relation to the deceased. By the terms of the amendment of 1914 the percentage is calculated in some cases on the property "passing" and in other cases on the property "trans-

ferred." The legislature ignored the distinction we had made under the act of 1914 in Carr *v.* Edwards. The difference in the language in the amendment of 1914 is not important, since in the cases specified "passing" and "transfer" alike connote the passing of the ultimate beneficial succession. We have, therefore, a tax which the statute requires shall be calculated on the value of the ultimate beneficial succession, at a rate which depends upon the propinquity of the legatee to the decedent; and each legatee sufficiently near to the decedent is entitled to an exemption of $5,000. We think these provisions indicate that the tax is to be calculated on the beneficial interest actually received by the legatee and not on what he would receive if there were no federal tax.

It is of little value to cite authorities dealing with different statutes. It is enough to refer to some of the cases for the light they throw on the general attitude of the courts. The weight of authority is in favor of our view. *Hooper et al.* v. *Shaw, Treasurer,* 176 *Mass.* 190; 57 *N. E. Rep.* 361; *In re Knight's Estate,* 104 *Atl. Rep.* 765; *Corbin* v. *Townsend,* 103 *Id.* 647; *Kingsbury* v. *Bazeley,* 75 *N. H.* 13; 70 *Atl. Rep.* 916; *People* v. *Pasfield,* 284 *Ill.* 450; 120 *N. E. Rep.* 286; *Smith* v. *Probate Court,* 166 *N. W. Rep.* 125; *In re Week's Estate* (*Wis.*), 172 *Id.* 732; *In re Sherman's Estate,* 166 *N. Y. Supp.* 19; 222 *N. Y.* 540; *Matter of Penfold,* 216 *N. Y.* 171; 110 *N. E. Rep.* 499; *People* v. *Palmer's Estate,* 25 *Col. App.* 450; 139 *Pac. Rep.* 554.

The Wisconsin case can hardly be regarded as authoritative, since the court took pains to question its own logic.

Let the judgment be affirmed.

BERGEN, J. (concurring). To the reasons stated in the principal opinion in favor of affirmance, I desire to add another which appears to me to be controlling. In making the appraisement of the clear market value of the Roebling estate the comptroller allowed no deduction for federal taxes levied against the net estate. The precise question to be decided is, Should the amount of the tax imposed by federal authority be

deducted from the gross estate in ascertaining its clear market value, subject to the transfer tax of this state? The act of congress provides that in fixing the net value of an estate, subject to the federal tax, there shall be deducted from the gross estate, *inter alia,* "such amount for funeral expenses, administration expenses, claims against the estate * * * and such other charges against the estate as are allowed by the laws of the jurisdiction * * * under which the estate is being administered." The United States Circuit Court of Appeals for the Third District, in *Lederer* v. *Northern Trust Co. et al.* (not yet reported), said that the federal tax relates not to an interest to which some person has succeeded by inheritance, bequest or devise, or to the interest of the deceased at his death, but to the transfer of that interest by devolution. The devolution thus referred to, of course, means that which the state by law permits, for, as to that matter, the state has the sovereign power, and in the case last cited the court laid down the rule that if the state tax is a charge against an estate, to be allowed to an executor or administrator in the settlement of the estate, then it is to be deducted by the federal officer from the gross estate before fixing a net estate as the basis for the assessment under the federal act. That is, if it is a charge against the estate the amount of the state transfer tax is to be deducted from the gross in ascertaining the net estate, subject to the federal assessment, but if the state tax is not a charge against the estate, but is against the inheritor or legatee, as a condition imposed by the state before devolution, then the state tax is not to be deducted from the gross in ascertaining the net estate taxable under the federal law. The difficulty with sustaining the action of the comptroller in fixing the net estate made subject to the New Jersey transfer statute is, that the latter does not impose a charge against the estate, but against the beneficiaries either by will or because of intestacy. The first section of our act imposes a tax upon the transfer of property "to persons or corporations," and it has been held in this state that it is a transfer tax, "not a general charge against the estate but a charge upon the legacies."

*Neilson* v. *Russell,* 76 *N. J. L.* 657. Section 7 of the act requires the executor to deduct from any legacy the transfer tax before paying it over to the legatee, but he is not allowed any credit for such payments on final accounting except against the legatee. This court having determined that our statute does not impose the tax as a charge against the estate it is not, under the terms of the federal statute, to be deducted in ascertaining the net estate for federal taxation, and, therefore, the comptroller has no right, in ascertaining the clear market value, to refuse to allow the amount assessed by the officers of the federal government as a tax for death duties, because the net estate to be distributed is reduced to that extent.

Such tax would, apparently, under the federal statute, and the *Lederer case, supra,* be deducted in fixing the net estate made subject to federal taxation, if the New Jersey statute made its transfer tax a charge against the estate payable out of the residue of the estate, but that is not the present situation.

The judgment should be affirmed.

*For affirmance on opinion of Mr. Justice Swayze*—THE CHIEF JUSTICE, SWAYZE, PARKER, KALISCH, HEPPENHEIMER, WILLIAMS, JJ. 6.

*For affirmance on opinion of Mr. Justice Bergen alone*— BLACK, J. 1.

*For affirmance on both opinions* — BERGEN, MINTURN, WHITE, TAYLOR, ACKERSON, JJ. 5.

*For reversal*—None.