*In re* FISH'S ESTATE.

APPEAL OF DETROIT TRUST CO.

1. TAXATION—FEDERAL ESTATE TAX—INHERITANCE TAX—DOUBLE TAXATION.
   Since both the Federal and State government may collect revenue from the same source, the collection of the Federal estate tax and the State inheritance tax from the same source is not double taxation in the offensive sense, neither being a tax upon property, although the value of the property is used to fix the measure of the tax in both instances.

2. SAME—TRANSMISSION OF PROPERTY—PRIVILEGE TAX.
   The right of transmission of property from the dead to the living, and the right of the living to receive property from the dead, are not inherent rights, but are privileges which may be taxed by a privilege tax.

3. SAME—LEGISLATURE AND NOT COURTS FIX MEASURE OF TAX.
   It is for the legislature, and not for the courts, to fix the yardstick by which the State inheritance tax should be measured.

4. SAME—FEDERAL ESTATE TAX NOT DEDUCTIBLE IN COMPUTING INHERITANCE TAX.
   Since, under sections 1 and 3 of the State inheritance tax law (3 Comp. Laws 1915, §§ 14524, 14526), a tax is imposed upon the "transfer of any property," to be levied "upon the clear market value of such property," and to be due and payable at the date of death, the amount paid to the Federal government as an estate tax (39 U. S. Stat. p. 777 *et seq.*), is not deductible from the value of the property at the time of decedent's death in computing the State inheritance tax.

5. SAME—INHERITANCE TAX LAW—AMENDMENTS—DEDUCTIONS.
   An amendment to the State inheritance tax law (Act No. 195, Pub. Acts 1903, 3 Comp. Laws 1915, § 14536) authorizing certain deductions to be made from the estate of
   219—Mich.—24.

the deceased in computing the amount of the inheritance tax may not be taken as ·justifying the deduction of a tax by the Federal government levied several years later, and which could not have been in the contemplation of the legislature.

6. SAME—RAISING OF REVENUES FOR THE LEGISLATURE—DEDUC-TIONS—PRESUMPTIONS.

The presumption that the legislature means to be just, while it may be indulged by the courts, is insufficient for them to authorize the deduction of the Federal estate tax in computing the amount of the State inheritance tax, where the statute does not authorize such deduction, since the raising of revenues is for the legislature and not for the courts.

7. SAME—CONSTITUTIONAL LAW—INHERITANCE TAX LAW—VALID-ITY.

The State inheritance tax law is not in conflict with the uniformity clause of the State Constitution (section 4, Art. 10), or the equal protection clause of the Federal Constitution (14th Amendment). *Union Steam Pump Sales Co.* v. *Secretary of State*, 216 Mich. 261.

Error to Saginaw; Snow (Ernest A.), J.    Submitted May 4, 1922.    (Docket No. 106.)    Decided July 20, 1922.

The Detroit Trust Company, executor of the last will of William Stillman Fish, deceased, appealed from an order of the probate court determining the amount of an inheritance tax.    Judgment affirming the probate order.    The executor brings error.    Affirmed.

*Oxtoby, Robison & Hull*, for appellant.

*Merlin Wiley*, Attorney General, and *Clare Retan*, Assistant Attorney General, for appellee.

*Edward A. Barnes, amicus curiæ.*

FELLOWS, C. J.    The sole question involved in this case is whether the amount paid to the Federal government as an estate tax under the act of September 8,

1916 (39 U. S. Stat. p. 777 *et seq.*), is deductible
from the value of the property at the time of decedent's death in computing the State inheritance tax (3
Comp. Laws 1915, § 14524 *et seq.*). William Stillman Fish of Saginaw died testate December 25, 1919,
leaving an estate appraised at $557,421.04. The
amount of the Federal estate tax paid by the executor
to the collector of internal revenue was $9,263.33,
which amount it is insisted should be deducted from
the value of the property before the State inheritance
tax is computed. The probate court and circuit court
of Saginaw county declined to allow the deduction and
the executor appeals. The provisions of the Federal
act so far as they need to be stated are as follows:

"SEC. 201. That a tax (hereinafter in this title referred to as the tax), equal to the following percentages of the value of the net estate, to be determined as
provided in section two hundred and three, is hereby
imposed upon the transfer of the net estate of every
decedent dying after the passage of this act, whether
a resident or nonresident of the United States: (Then
follows a graduated tax.)

"SEC. 202. That the value of the gross estate of
the decedent shall be determined by including the
value at the time of his death of all property, real
or personal, tangible or intangible, wherever situated. * * *

"SEC. 203. That for the purpose of the tax the value
of the net estate shall be determined—

"(*a*) In the case of a resident, by deducting from
the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid
mortgages, losses incurred during the settlement of
the estate arising from fires, storms, shipwreck, or
other casualty, and from theft, when such losses are
not compensated for by insurance or otherwise, support during the settlement of the estate of those dependent upon the decedent, and such other charges
against the estate as are allowed by the laws of the
jurisdiction, whether within or without the United

States, under which the estate is being administered; and

"(2) An exemption of $50,000." * * *

Subdivision 1 of this section was amended by the act of February 4, 1919 (40 U. S. Stat. p. 1098), by adding the following:

"but not including any income taxes upon income received after the death of the decedent, or any estate, succession, legacy, or inheritance taxes."

We do not quote or refer to the administrative features of the act or the provisions unimportant to this inquiry.

Authority is not wanting. Indeed there is an abundance of it on both sides of the question. In point of number more courts have sustained the propriety of the deduction, than have denied it. The following cases hold that the Federal tax is deductible: *In re Miller's Estate*, 184 Cal. 674 (195 Pac. 413, 16 A. L. R. 694); *People* v. *Bemis*, 68 Colo. 48 (189 Pac. 32); *Corbin* v. *Townshend*, 92 Conn. 501 (103 Atl. 647); *People* v. *Pasfield*, 284 Ill. 450 (120 N. E. 286); *State* v. *Savings Bank*, 71 Ind. App. 467 (125 N. E. 200); *Old Colony Trust Co.* v. *Burrell*, 238 Mass. 544 (131 N. E. 321, 16 A. L. R. 689); *State* v. *Probate Court*, 139 Minn. 210 (166 N. W. 125); *Bugbee* v. *Roebling*, 94 N. J. Law, 438 (111 Atl. 29); *In re Inman's Estate*, 101 Or. 182 (199 Pac. 615, 16 A. L. R. 675); *Knight's Estate*, 261 Pa. 537 (104 Atl. 765). The following cases hold that the tax is not deductible: *In re Sanford's Estate*, 188 Iowa, 833 (175 N. W. 506); *In re Gheens*, 148 La. 1017 (88 South. 253, 16 A. L. R. 685); *In re Sherman*, 179 App. Div. 497 (affirmed without opinion, 222 N. Y. 540 [118 N. E. 1078]); *Hazard* v. *Bliss*, 43 R. I. 431 (113 Atl. 469); *In re Week's Estate*, 169 Wis. 316 (172 N. W. 732). We have cited but one case from each State which has passed upon the

question. In some instances the question has been before the court of last resort of the State on more than one occasion.

The weight of authority, however, is not always determined by the use of an adding machine. We not infrequently follow the minority in number of the holdings, and should do so where such holdings appeal to our judgment and convince us that the true rule has been arrived at by the minority in number. We have examined the inheritance tax statutes of the States where this question has been determined and have carefuly considered the cases above cited and others bearing on the question. We feel free to state that the opinion of Chief Justice Sweetland in *Hazard* v. *Bliss, supra,* has been most persuasive to us in reaching the result we have arrived at. That case is a very late one (decided May 4, 1921) and in the prevailing opinion the learned Chief Justice of that court fully reviews the authorities from other States which have preceded it and clearly points out, we think, the correct rule. The analysis of all the cases decided at that time is so complete that we shall not undertake one of our own of all the cases which have dealt with the subject. We shall consider some of the statutes and the cases decided under them, and the policy of the States as fixed by their legislatures and by judicial decisions.

The concessions of counsel who have argued the case and who have filed briefs, and they have all been eminently fair with the court, eliminate the consideration and citation of cases dealing with well-settled principles. Irrespective of the policy involved and so far as the present question is concerned, both Federal and State governments may collect revenue from the same source. It is not double taxation in the offensive sense. Neither the Federal estate tax nor the State inheritance tax is a tax upon property, al-

though the value of property is used to fix the measure of the tax in both instances.   The right of transmission of property from the dead to the living, the right of the living to receive property from the dead, are not inherent rights, but are privileges which may be taxed by a privilege tax.   In *Knowlton* v. *Moore*, 178 U. S. 41 (20 Sup. Ct. 747), where the court had before it the inheritance tax feature of the war revenue act of June 13, 1898 (30 U. S. Stat. p. 464 *et seq.*), Mr. Justice White, who wrote the prevailing opinion, fully reviewed the history of death duties and after such review said:

"Thus, looking over the whole field, and considering death duties in the order in which we have reviewed them, that is, in the Roman and ancient law, in that of modern France, Germany and other continental countries, in England and those of her colonies where such laws have been enacted, in the legislation of the United States and the several States of the Union, the following appears:   Although different modes of assessing such duties prevail, and although they have different  accidental names, such as probate duties, stamp duties, taxes on the transaction, or the act of passing of an estate or a succession, legacy taxes, estate taxes or privilege taxes, nevertheless tax laws of this nature in all countries rest in their essence upon the principle that death is the generating source from which the particular taxing power takes its being and that it is the power to transmit, or the transmission from the dead to the living, on which such taxes are more immediately rested."

Applying the classification of death duties laid down in the opinion of Justice White, the Federal estate tax may be regarded as a tax upon the privilege of transmission of property upon death, and the inheritance tax a tax upon the privilege of receiving property upon the death of the owner.   In the view we take of the question, however, we do not regard the question of classification as important.

Turning now to the statutes of some of the States which have sustained the right to deduct the Federal tax, we find in some of them radically different provisions from those found in our inheritance tax statute.   The Connecticut statute fixes the measure of the tax as "the net estate of any resident of this State passing to" the heir, devisee or legatee (General Statutes of Connecticut 1918, § 1264).   This language might well be construed as fixing the measure of the tax as the net value of the property received by the heir, devisee or legatee, and as justifying the deduction.   The Indiana statute fixing the rate and measure of the tax (4 Burns' Ann. Stat. 1914, § 10143c) which was applicable to the case before the Indiana court of appeals, reads as follows:

"The foregoing rates in section 2 are for convenience termed the primary rates.   When the amount of the clear market value of such property or interest to which any such person becomes beneficially entitled exceeds twenty-five thousand dollars, the rates of tax upon such excess shall be as follows—"   *   *   *

This provision was the one before the court for construction and after citing it the court said:

"This tax, it will be observed, is not imposed upon the transfer of the estate occasioned by death, but upon the transfer to the legatee or devisee if the transfer is the subject of a legacy, or devise, or to the heir if the transfer is the subject of a distribution or descent, and is made upon the clear market value of the interest of such beneficiary."   *   *   *

The language of the section of the Illinois act (5 Ill. Ann. Stat. § 9597, subd. 4) fixing the rate or measure of the tax is

"when the beneficial interest to any property or income therefrom shall pass to (naming the relationship)   *   *   *.   In every such case the rate of tax shall be two dollars on every one hundred dollars of the clear market value of such property received by each person."

Considering the language of the Connecticut, Indiana and Illinois statutes just referred to it must be manifest that any construction of them other than that given by the courts in the cases cited would be of doubtful propriety. In each of the statutes by its plain and definite language the value of the estate *received* by the beneficiary was made the measure of the tax, and as the sums paid to the Federal government were not *received* by the beneficiary they, therefore, were not a part of the measure of the tax. The policy of the State had been fixed by the legislature and the holdings of the courts were in consonance with that policy. In Massachusetts and Pennsylvania the courts of last resort had committed themselves prior to the adoption of the Federal estate tax to the doctrine that deductions should be made for succession taxes paid to other sovereignties. In *Hooper* v. *Shaw*, 176 Mass. 190 (57 N. E. 361), it was held that the tax paid the Federal government under the war revenue act of June 13, 1898, was deductible in computing the inheritance tax under the inheritance tax law of the State, and in *Van Beil's Estate*, 257 Pa. 155 (101 Atl. 316), the amount paid to the other States for inheritance taxes was held deductible on the ground that—

"The collateral inheritance tax imposed by our State is upon the clear value of the property or estate passing to the legatee or devisee."

These holdings were consistently followed in the cases above cited. Thus it will be seen that in five of the States holding that the deduction should be made, either by legislative enactment or by decision of the courts of last resort, the policy of allowing deductions for sums paid to other sovereignties had been adopted prior to the enactment of the Federal estate tax. Not so with this State. Neither by express legislative enactment, decision of the court of last

resort, or by departmental action had this State countenanced such policy.

Two cases relied upon by the attorney general are criticized. *In re Sanford's Estate, supra,* is assailed as not in point because of the language used in the Iowa statute (Code of Iowa, 1913, § 1481-*a*2). We cannot agree with counsel. The case is squarely in point in holding that the estate tax cannot be treated as an expense of administration, and it also sustains the contention, of the attorney general that the tax is not deductible. The case of *In re Gheens, supra,* is assailed as too strongly savoring of the doctrine of State's rights. We may not adopt all the language used by the supreme court of Louisiana in that case but we must not lose sight of the fact that while the courts of the country, both Federal and State, should steadfastly uphold the sovereignty of the Federal government when acting within its sphere, they should with equal steadfastness uphold the sovereignty of the State governments when acting within their spheres.

Let us turn now to our statute. In considering its provisions we must constantly bear in mind that we are not dealing with a property tax, that the value of the property is only important in furnishing the yardstick to measure the tax. This distinction we fear has not been kept in the foreground by some of the courts. By section 1 of the act (3 Comp. Laws 1915, § 14524) a tax is imposed upon the *"transfer* of any property," and the tax is levied "upon the clear market value of such property." By section 3 (3 Comp. Laws 1915, § 14526) it is provided that:

"All taxes imposed by this act shall accrue and be due and payable at the time of transfer, which is the date of death."

It will, therefore, be seen, although the language quoted is found in different sections and the arrange-

ment of it might be improved, that the State by this act has levied an inheritance tax upon the clear market value of the property at the time of death and that it is then due and payable. The tax is measured not by the value of the right, but by the value of the property transferred; not by what it is worth when it reaches the possession of the beneficiary, but by the clear market value at the instant of death; not what it will net him after deducting expenses and lawyers' fees, but by its clear market value at the date of transfer. The legislature must be deemed to have used the expression "clear market value" in its commonly accepted meaning. The clear market value of a farm is neither enhanced nor diminished by reason of the fact that there is a mortgage on it or that the taxes have or have not been paid. One purchasing an automobile will not find its purchase price diminished by the fact that he must pay a tax before he can have the beneficial use of it; indeed he is quite apt to learn that the Federal tax has been added to instead of deducted from its value as evidenced by its purchase price. As we shall presently see it was for the legislature, not for the courts, to fix the yardstick by which the tax should be measured. Having fixed it at the clear market value of the property at the date of transfer which is at the instant of death, we should not attempt to alter it.

In section 13 of our inheritance tax statute (§ 14536) will be found the following:

"The judge of probate may, and shall on application of the attorney general or auditor general, require the executor, administrator or trustee of any estate to file with him an itemized statement or petition containing itemized statement, under oath, of the personal property and real property within his knowledge or possession or under his control as such executor, administrator or trustee, which statement shall indicate the date from which interest and dividends

were due and unpaid upon each item of the personal estate, together with the rate of such interest and also of the amount and character of any incumbrances upon such real estate at the time of the death of said deceased, and other data, such as debts, expenses of administration and other charges which constitute proper deductions in reaching a taxable remainder under the provisions of this act." * * *

This language was not in the original act (Act No. 188, Pub. Acts 1899) but was inserted by way of amendment in 1903 (Act No. 195, Pub. Acts 1903). This language was doubtless written into our statute by the legislature for the purpose of justifying certain deductions which in the administration of our law have always been made. It is possible it accomplished its purpose, a question we need not now decide. But this loose language cannot be taken as justifying the deduction of a tax by the Federal government levied some 13 years later and which could not have then been in the contemplation of the legislature.

Considerable is claimed for certain language found in the case of *New York Trust Co.* v. *Eisner,* 256 U. S. 345 (41 Sup. Ct. 506, 16 A. L. R. 660), in which case the court held that the State inheritance taxes were not deductible in computing the Federal tax, the language most strongly stressed being:

"As to intestate successors the tax is not imposed upon them but precedes them and the fact that they may receive less or different sums because of the statute does not concern the United States."

The court was considering the constitutional question when it used the language quoted and a reading of the case will, we think, clearly indicate that what the court there had in mind was that the Federal tax "precedes" the possession of the beneficiary. Manifestly so far as our statute is concerned the date of transfer is the same as the Federal act, *i. e.,* the instant of death, and neither precedes the other.

Recurring again to the case of *Hazard* v. *Bliss,
supra,* it will be noted that the Rhode Island statute
expressly provides for the deduction of the expenses
of administration.     While there was dissent in the
case on one point all agreed that the Federal tax was
not an expense of administration and the majority of
the court held that the exaction by the Federal govern-
ment of an estate tax did not operate to change the
measure of the State inheritance tax.    It was there
said:

"In the matter before us the Nation and the State
has each sought to tax the right to transfer. By enter-
ing the same field of taxation, equally open to each,
neither sovereign has diminished the subject of the
tax, nor has it reduced the revenues of the other.   By
the use of the same measure neither has impaired that
measure.    When the Federal government taxed the
right to transfer the net estate, it did not reduce the
net estate nor that portion which our law permitted
the testator to transfer to the residuary legatee; al-
though by reason of the collection of the Federal tax
the amount which the residuary legatee received was
diminished.    *    *    *

"The courts of some other States have given to their
respective inheritance tax acts the same construction
which we place upon the Rhode Island act; the essen-
tial principles applied by such courts being that the
transfer is a creature of the State law, that it takes
place at the instant of the decedent's death, that the
measure of the tax is the value of the legacy at that
time,  and  unless so provided in the State law that
value is not affected by the tax laws or levies of other
sovereignties or by subsequent events."

Some of the cases holding that the Federal tax is
deductible are based on the premise that we must
presume that the legislature intended to be just and
that it would be unjust not to allow the deduction.
Illustrative of this class of cases is *Bugbee* v. *Roebling,
supra,* a case frequently cited, where the premises are
thus stated in the opinion:

"Disguise the situation as we may by the use of different names, we cannot avoid the fact, which must be painfully real to the legatees, that the same property bears a double burden.    If each tax were fifty per cent. it would not help the legatees to be told that one tax was on the estate and the other on the succession; the estate and the succession would both be deprived of beneficial value to the legatees.

"In this, as in all other cases of statutory construction, we start with the fundamental assumption that the legislature means to be just.    It needs no argument to prove the injustice of double taxation."

If we follow this line of reasoning to its logical conclusion would not the result be this: We must presume that the legislature means to be just; what is just is for the court to determine; taxation by both sovereigns of the same source of revenue is unjust; hence when the Federal government lays its hand on a source of revenue theretofore exclusively enjoyed by the State the State must forego its revenues in order to prevent an injustice which we cannot presume the legislature intended, and that these things should be taken into consideration in construing the statute.

We may indulge the presumption that the legislature means to be just but we must also indulge the presumption that in passing taxation measures it is seeking to produce revenues for governmental purposes.    The raising of revenues is for the legislature and not for the courts.    We have, when called upon, without hesitation prevented the intrusion by one branch of the government into the sphere of any other branch of the government.    The courts should be extremely careful that they do not themselves intrude into the sphere of any other department of the government.    The legislature has not authorized the deduction here asked for and it is not an expense of administration.    Without judicial legislation the deduction cannot be made.    We decline to usurp the

functions of the legislature or by judicial legislation to amend its laws.

It is further urged that the State inheritance tax law is in collision with the uniformity clause of the State Constitution and the equal protection clause of the Federal Constitution if we reach the conclusion above announced. We have so recently considered this question in *Union Steam Pump Sales Co.* v. *Secretary of State*, 216 Mich. 261, that it will suffice to say that this contention must be overruled on the authority of that case and the authorities there cited.

The judgment will be affirmed.

WIEST, MCDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.