*In re* McCORNACK ESTATE

NATIONAL BANK OF DETROIT v DEPARTMENT OF TREASURY·

Docket No. 60417. Argued November 14, 1978 (Calendar No. 6).—
   Decided July 12, 1979. Rehearing denied 407 Mich 1149.

   Plaintiffs National Bank of Detroit, Marjorie M. Ward, and
   Duncan Brian, executors of the estate of Daisy G. McCornack,
   deceased, petitioned for a redetermination of the state inheri-
   tance tax. The plaintiffs argued that certain United States
   Treasury bonds, which had been redeemed at par value in
   partial payment of Federal estate taxes, should be appraised at
   their over-the-counter value, rather than at their higher par
   value. The defendant Department of Treasury opposed the
   redetermination. The Wayne County Probate Court, Joseph J.
   Pernick, J., granted the petition for redetermination. The
   Wayne Circuit Court, Joseph B. Sullivan, J., affirmed the order
   of the probate court. The Court of Appeals, D. E. Holbrook, Jr.,
   P.J., and Allen and Freeman, JJ., reversed (Docket No. 29984).
   Plaintiffs appeal. *Held:*

   For purposes of the Michigan inheritance tax the bonds must
   be appraised at par value to the extent they are used to pay
   Federal estate taxes.

   1. The Legislature has not seen fit to define the term "clear
   market value", the standard which the probate judge must
   apply. The most generally accepted concept of the term is
   composed of three separate but integrated elements: 1) the
   highest price obtainable, 2) a willing seller not obliged to sell,
   and 3) a willing buyer not obliged to buy.

   2. An analysis of the three elements of clear market value
   compels the conclusion that for Michigan inheritance tax pur-
   poses the clear market value of these United States Treasury
   bonds is their par value. The par value in this case exceeds the
   over-the-counter value to such an extent that there can be no

REFERENCES FOR POINTS IN HEADNOTES
[1, 5] 42 Am Jur 2d, Inheritance, Estate, and Gift Taxes §§ 32, 248,
   249.
[2, 4, 7] 42 Am Jur 2d, Inheritance, Estate, and Gift Taxes § 249.
[3, 6, 8, 9] 42 Am Jur 2d, Inheritance, Estate, and Gift Taxes § 264.

doubt that the par value constitutes the highest price obtainable. The executors of the McCornack estate are a willing seller not obliged to sell. The establishment of the additional par value market by the United States government offers the bondholder in this situation a true choice of redemption markets. In determining what is clear market value, it is without logic to simply ignore the very market arrangement selected by the holder to sell or redeem the bonds. The redemption is based upon a prudent election made by the bondholder depending upon which of the markets pays a higher price. The United States government, in agreeing to purchase the bonds at par from the holder, is a willing buyer not obliged to buy by contract. The Internal Revenue Code of 1954 gave the United States Treasury entirely permissive authority to agree to redemption and to redeem bonds. This authority hinges upon the authorization of Congress for such agreement and purchase by redemption. If Congress should revoke the authority of the Secretary of the Treasury to accept such bonds in payment of Federal estate taxes or if the Secretary of the Treasury amends the redemption regulations, there is no offer to redeem which can be accepted.

Affirmed.

Chief Justice Coleman, joined by Justices Williams and Ryan, dissented. She wrote:

1. The Legislature must be deemed to have used the expression "clear market value" in its commonly accepted meaning. Although this term has not been defined by the Legislature, it can be fairly defined as the sum a willing buyer, not compelled to buy, and a willing seller, not compelled to sell, would agree upon. It is unlikely that one can find a clearer indication of market value than the "bid" and "asked" prices of the over-the-counter bond market. The actual value of the property to the estate and its beneficiaries when the bonds are used to pay the Federal estate tax is irrelevant for purposes of determining the Michigan inheritance tax liability. The market value as of the date of death is the statutorily mandated standard.

2. The rationale of the courts in other jurisdictions which have adopted the par value method is not persuasive. Two of those states have express policies of conforming their methods of estate valuation to the Federal valuation. Michigan has no such policy. Three other states and the Federal courts rely on expansive definitions of market value provided by statute, administrative regulation, or judicial interpretation which allow consideration of all "relevant facts and elements of value" when appraising the market value of assets. Again, there are

no statutes or regulations in Michigan which even suggest that consideration be given to facts other than bond market prices. Furthermore, Michigan caselaw leaves no room for such an expansive judicial interpretation of the statute.

3. The argument that the United States government provides a "second market" for these bonds by redemption at their par value is of little persuasive force. The term "market value" presumes an open market where prices will be set by unfettered economic forces. The "market" run by the United States government is open to only one particular type of treasury bondholder, who must die to take advantage of it, and there is only one "buyer". At the same time there is a genuine market with many buyers and sellers and an established price elsewhere.

4. The terms "clear market value", "fair market value", or "market value" preclude consideration of the actual value of estate property to the beneficiaries. The Legislature has chosen to use a uniform standard when computing the tax: market value as of the date of death.

78 Mich App 135; 259 NW2d 396 (1977) affirmed.

OPINION OF THE COURT

1. TAXATION — INHERITANCE TAX — MARKET VALUE — STATUTES.

"Clear market value" is a term of art which the Legislature has not seen fit to define in the inheritance tax act; therefore, the term must be construed according to its most generally accepted definition (MCL 205.213; MSA 7.574).

2. TAXATION — INHERITANCE TAX — MARKET VALUE — WORDS AND PHRASES.

The "clear market value" of an asset under the inheritance tax act is a concept composed of three separate but integrated elements: the highest price obtainable, a willing seller not obliged to sell, and a willing buyer not obliged to buy (MCL 205.213; MSA 7.574).

3. TAXATION — INHERITANCE TAX — UNITED STATES TREASURY BONDS — MARKET VALUE.

The "clear market value" of certain United States Treasury bonds for purposes of Michigan inheritance taxes was their par value where the bonds were redeemed at par value in payment of Federal estate taxes and par value exceeded the over-the-counter market price at the time of the decedent's death (26 USC 6312; MCL 205.213; MSA 7.574).

DISSENTING OPINION BY COLEMAN, C.J.

4. TAXATION — INHERITANCE TAX — MARKET VALUE — WORDS AND PHRASES.

*The "clear market value" of an asset under the inheritance tax act can be fairly defined as the sum a willing buyer, not compelled to buy, and a willing seller, not compelled to sell, would agree upon (MCL 205.213; MSA 7.574).*

5. TAXATION — INHERITANCE TAX — MARKET VALUE — STATUTES.

*Clear market value has not been defined by the Legislature in the inheritance tax act; therefore, the Legislature must be deemed to have used the expression in its commonly accepted meaning (MCL 205.213; MSA 7.574).*

6. TAXATION — INHERITANCE TAX — UNITED STATES TREASURY BONDS — MARKET VALUE.

*The "bid" and "asked" prices of the over-the-counter market for United States Treasury bonds give the clear market value on the date of the decedent's death for purposes of the Michigan inheritance tax; the value of the property to the estate and its beneficiaries when the bonds are used to pay the Federal estate tax is irrelevant (MCL 205.213; MSA 7.574).*

7. TAXATION — INHERITANCE TAX — MARKET VALUE — WORDS AND PHRASES.

*The term "market value" presumes an open market where prices would be set by unfettered economic forces, accessible to any willing buyer or seller (MCL 205.213; MSA 7.574).*

8. TAXATION — INHERITANCE TAX — UNITED STATES TREASURY BONDS — MARKET VALUE.

*The redemption of certain United States Treasury bonds at par value in payment of Federal estate taxes does not create a "market" value for the bonds for purposes of Michigan inheritance taxes because that redemption is open to only one particular type of holder, who must die to take advantage of it, and there is only one buyer (MCL 205.213; MSA 7.574).*

9. TAXATION — INHERITANCE TAX — MARKET VALUE.

*The Legislature has chosen to utilize a uniform standard of the value of assets of a decedent's estate when computing the inheritance tax, market value as of the date of death; that value, for United States Treasury bonds, should be determined by the over-the-counter bond market (MCL 205.213; MSA 7.574).*

*Beaumont, Smith & Harris* (by *James E. Beall*) for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Terry P. Gomoll,* Assistants Attorney General, for defendant.

BLAIR MOODY, JR., J. *(for affirmance).* We granted leave to appeal to consider whether certain United States Treasury bonds, which were redeemed at par value by an executor in payment of Federal estate taxes, should be valued for Michigan inheritance tax purposes at par value or at the price quoted in the over-the-counter bond market on the date of decedent's death.

We determine that for purposes of the Michigan inheritance tax, the bonds should be appraised at par value to the extent they are used to pay Federal estate taxes. We, therefore, would affirm the Court of Appeals.

## FACTS

On Saturday, May 20, 1970, Daisy Gertrude McCornack died, leaving an estate inventoried at $1,334,194.15. Among the assets of the estate were certain issues of United States Treasury bonds with a par or face value of $298,000. The bonds, commonly referred to as "deep discount" or "flower" bonds, are redeemable at par value by estate executors provided (1) the holder owns the bonds on the date of death; (2) the bonds are properly includable as an asset of the estate; and (3) the executor redeems the bonds with the United States Treasury Department and uses the proceeds to pay the Federal estate tax owed by the estate. The executors of the McCornack estate elected to redeem the bonds at par value in partial payment of the Federal estate taxes owed.

On December 13, 1974, the Wayne Probate Court issued an order determining the Michigan inheritance tax for the estate. For Michigan tax purposes the value of the flower bonds was appraised at par value or $298,000.

In a petition for rehearing, decedent's executors claimed that the probate order had been entered erroneously. The executors argued that the value of the flower bonds should be determined by the price of the bonds on the over-the-counter market. Thus, the value of the bonds for Michigan estate tax purposes would be the price as quoted in the Wall Street Journal on the Friday before and the Monday after decedent's death or $234,065.93.

Subsequently, the probate court revised its order and appraised the bonds at their over-the-counter market value. This order was appealed by the Michigan Department of Treasury to the Wayne Circuit Court, which affirmed.

On appeal, the Court of Appeals reversed. 78 Mich App 135; 259 NW2d 396 (1977).

## DISCUSSION

The issue in the instant case is clearly and narrowly drawn: whether United States Treasury bonds, which can be redeemed at par value for Federal estate tax purposes, should be valued for Michigan inheritance tax purposes at par value or at the price quoted on the over-the-counter market. What is unclear, however, is the legal standard to be applied in determining whether par value or the over-the-counter market value controls.

The Michigan Legislature has enacted the following formula for the determination of the value of an estate:

"(1) The report of the appraiser shall be filed in the office of the judge of probate, and from such report and other proof relating to any estate before the judge of probate, the judge of probate shall forthwith, as of course, determine the *clear market value* of all estates as of the date of transfer." (Emphasis added.) MCL 205.213; MSA 7.574.[1]

Although the appropriate standard the probate judge must apply is "clear market value", the Legislature has not seen fit to define this rather elusive term of art.

While the term "clear market value" is often used synonymously with the terms "fair market value", "market value" and "actual value",[2] the most generally accepted definition of the term is as follows:

"With regard to inheritance tax, highest price obtainable. [S]um which property would bring on a fair sale by a willing seller not obliged to sell to a willing buyer not obliged to buy, or fair market value, or cash value." (Citations omitted.) Black's Law Dictionary (4th ed), p 318.

Thus, the concept of clear market value is composed of three separate but integrated elements: (1) the highest price obtainable; (2) a willing seller not obliged to sell; (3) a willing buyer not obliged to buy.

An analysis of the three elements of the definition of clear market value compels us to conclude that for Michigan inheritance tax purposes the

---

[1] The date of transfer is the date of death. It is referred to as the date of transfer because it is on that date that any interest in the estate passes from the decedent to the beneficiaries. MCL 205.203; MSA 7.564; MCL 205.204; MSA 7.565.

[2] *Cf. Anderson v Frischkorn Real Estate Co*, 253 Mich 668, 670; 235 NW 894 (1931).

clear market value of these flower bonds is their
par value.

I

As par value of $298,000 exceeds the over-the-
counter value of $234,065.93 by $63,934.07, there
can be no doubt that par value in the instant case
constitutes the *highest price obtainable.*

II

It is also evident that the executors of the
McCornack estate, in redeeming the flower bonds
in partial payment of Federal estate taxes, consti-
tute *a willing seller not obliged to sell.*

Appellants argue that the estate executors can-
not be willing sellers because as executors they
owe a fiduciary duty to the estate to sell at the
highest price obtainable. Accordingly, because par
value constitutes the highest price obtainable, the
estate executors are *compelled* to sell at par value.
We think this argument misses the point.

First, appellant's argument ignores the fact that
highest price obtainable constitutes an essential
element of the definition of clear market value.

Second, we are aware that there are in essence
two markets for the redemption of flower bonds:
The United States government and the over-the-
counter bond market. The California Supreme
Court has pointedly noted:

"It is common knowledge that one of the chief rea-
sons for the purchase of the type of bond here involved
is the advantageous marketability at the death of the
holder, the United States Government having created
an additional market for the bonds in which the estate
of the holder is assured of an opportunity to obtain par

value to the extent there is federal estate tax liability that may be extinguished by their surrender." *In re Estate of Rosenfeld,* 62 Cal 2d 432, 434; 42 Cal Rptr 449; 398 P2d 783 (1965).

Accord, *In the Matter of the Estate of Eggert,* 82 Wash 2d 332, 335; 510 P2d 645 (1973).

The effect, then, of the establishment by the United States government of an additional market for the flower bonds is to offer the holder of the bonds a *choice* of markets in which to redeem the bonds. Insofar as there is Federal estate tax liability and insofar as par value exceeds the over-the-counter market value on the date of decedent's death, the holder may redeem the bonds in the government market. If on the date of death, however, the value of the bonds on the over-the-counter market exceeds par value as it often does, it would be folly and, perhaps, violation of the fiduciary duty if the holder, acting as a prudent, willing seller, would not redeem the bonds on the over-the-counter market.

Therefore, the establishment of the additional bond market offers the bond holder a true choice of redemption markets. The redemption is based upon a prudent election made by the holder. In determining what is clear market value, it is without logic to simply ignore the very market arrangement selected by the holder to sell or redeem the bonds.

### III

The converse is equally true, *i.e.,* the United States government, in agreeing to purchase the bonds at par value from the holder, constitutes a *willing buyer not obliged to buy.*

Appellants contend that the United States gov-

ernment by contractually agreeing to redeem the flower bonds in payment of Federal estate taxes is not a willing buyer but is compelled to redeem the bonds. We disagree.

Congress in enacting § 6312 of the Internal Revenue Code of 1954 has given the United States Treasury general *permissive* authority to redeem United States bonds in payment of taxes:

"It shall be lawful for the Secretary or his delegate to receive, at par with an adjustment for accrued interest, Treasury bills, notes and certificates of indebtedness issued by the United States in payment of any internal revenue taxes, or in payment for internal revenue stamps, to the extent and under the conditions provided in regulations prescribed by the Secretary or his delegate." 26 USC 6312.

Thus, the authority of the United States Treasury to agree to and to redeem bonds in payment of taxes is entirely permissive and hinges upon the authorization of Congress for such agreement and purchase.[3]

The permissive quality of the United States government's agreement to redeem Treasury bonds is dramatically emphasized in the Treasury Department circulars issued for the flower bonds at issue in the instant case:

"Any bonds issued hereunder which upon the death of the owner constitute part of his estate, will be

---

[3] We note that 26 USC 6312 was repealed by PL 92-5, § 4(a) (March 17, 1971), with respect to United States obligations issued after March 3, 1971. Thus, United States Treasury bonds issued after March 3, 1971, cannot be used to pay Federal estate taxes. While this statutory change does not directly affect the specific flower bonds at issue in the instant case, we note further that as of January 31, 1975, in excess of $3.5 billion of the flower bonds were outstanding. The total amount of redeemable bonds outstanding was more than $20.5 billion. Form PD 800-B (Rev Feb, 1975), Dep't of the Treasury, Bureau of the Public Debt.

redeemed at the option of the duly constituted repre-
sentatives of the deceased owner's estate, at par and
accrued interest to date of payment, provided:

"(a) That the bonds were actually owned by the
decedent at the time of his death; and

"(b) *That the Secretary of the Treasury be authorized
to apply the entire proceeds of redemption to the pay-
ment of Federal estate taxes.*" (Emphasis added.) 1955
Treasury Dep't Circular No. 956, 20 Federal Register
774 (1955), and 1960 Treasury Dep't Circular No. 1052,
25 Federal Register 8966 (1960).

It is obvious from the very language of the
circular and from the statutory language that the
United States Treasury is under no compulsion to
receive Treasury bonds in satisfaction of tax obli-
gations. It voluntarily receives the bonds in pay-
ment of Federal estate taxes. If Congress should
revoke the authority of the Secretary of the Trea-
sury to accept such bonds in payment of Federal
estate taxes or if the Secretary of the Treasury
amends the redemption provisions, there is no
offer to redeem which can be accepted.

From all the above, we hold that for purposes of
the Michigan inheritance tax, the United States
Treasury bonds at issue should be appraised at par
value to the extent they are used to pay Federal
estate taxes.

We think that our decision today clearly com-
ports with the intent of the Legislature in adopt-
ing "clear market value" as the standard to be
applied in the appraisal of estates for Michigan
tax purposes. We are cognizant of the fact that
other jurisdictions have split over the issue before
us; but we think that our holding reflects impor-
tant policy considerations that were similarly ad-
dressed by a Justice of the Idaho Supreme Court:

"*While the Congress of the United States may have*

*intended to create a federal estate tax loophole by providing that certain bonds be redeemed at par value in satisfaction of those taxes—presumably in order to increase the attractiveness to investors of the low interest federal bonds—there is no indication that Idaho's legislature intended a similar loophole in this state's inheritance tax laws, particularly since Idaho has no interest in facilitating the marketability of federal bonds.*" (Emphasis added.) *Stein v State Tax Comm,* 99 Idaho 70, 74; 577 P2d 798, 802 (1978). (Bakes, J., dissenting.)

## CONCLUSION

We conclude that United States Treasury bonds which are redeemed at par value for Federal estate tax purposes should be valued at par value for Michigan inheritance tax purposes.
We would affirm the Court of Appeals.

No costs, a public question.

KAVANAGH, LEVIN, and FITZGERALD, JJ., concurred with BLAIR MOODY, JR., J.

COLEMAN, C.J. *(dissenting).* The question presented in this appeal is whether United States Treasury bonds, which were redeemed at par (face) value in payment of Federal estate taxes, should be valued for Michigan inheritance tax purposes at par value or the value computed from prices quoted in the bond market as of the date of decedent's death. Certain issues of treasury bonds (denoted "flower bonds") are redeemable at their par value to the extent that the monies are used to pay Federal estate taxes. Predictably, bonds which are thus redeemed at par are appraised at par when computing the value of the Federal gross

estate.[1] The conflict arises because the Michigan inheritance tax act, MCL 205.201 *et seq.;* MSA 7.561 *et seq.,* requires that estate property be appraised at its "clear market value". MCL 205.213; MSA 7.574.[2]

Among the assets of the Daisy Gertrude Mc-Cornack estate were flower bonds with a face value of $298,000. Utilizing the prices in the over-the-counter market, quoted in the Wall Street Journal, these same bonds could be valued at $234,065.93 as of the date of death.[3] The executors exercised their right to redeem the bonds at par and applied the monies received to the Federal estate tax obligation.[4] The Wayne County Probate Court subsequently assigned the bonds their par value when appraising the estate for Michigan inheritance tax purposes. In a petition for rehearing, the executors argued that the "clear market value" of the bonds was the lower value computed from the over-the-counter market prices.

On May 20, 1975, the probate court adopted the valuation advocated by the executors. On appeal, the Wayne Circuit Court affirmed. However, on

---

[1] *E.g., Bankers Trust Co v United States,* 284 F2d 537 (CA 2, 1960), cert den 366 US 903 (1961), Rev Rul 69-489, 1969-2 Internal Revenue Cumulative Bulletin, p 172.

[2] MCL 205.213(1); MSA 7.574(1), in pertinent part, reads:

"(1) The report of the appraiser shall be filed in the office of the judge of probate, and from such report and other proof relating to any estate before the judge of probate, the judge of probate shall forthwith, as of course, determine the clear market value of all estates as of the date of transfer, and the amount of tax to which the same is liable, or the judge of probate may so determine the clear market value of all estates and the amount of tax to which the same are liable without appointing an appraiser."

[3] The deceased died on a weekend. According to *The Wall Street Journal,* the bid and asked prices on such bonds on the Friday before and the Monday after death averaged $234,065.93. Flower bonds are actively traded, daily, in an over-the-counter market.

[4] The estate was inventoried at $1,334,194.15. The Federal estate tax obligation was $435,193.40. All the flower bonds were redeemed at a par value of $298,000 and applied in partial payment of this debt.

September 7, 1977, the Court of Appeals reversed the probate and circuit court judges and assigned the bonds their par value. 78 Mich App 135; 259 NW2d 396 (1977).

We would reverse the Court of Appeals and hold that the "clear market value" of these flower bonds is best reflected by the prices they could have brought in the bond market on the date of death. While we are cognizant that our decision creates an advantage to the taxpayer under the state inheritance tax act, we are persuaded that this decision best comports with the statutorily expressed intent of the Michigan Legislature. Actual value of an asset to an estate is irrelevant for purposes of Michigan inheritance tax valuation. The market value as of the date of death is the statutorily mandated standard.

I

Section 13 of the inheritance tax act requires that:

"(1) The report of the appraiser shall be filed in the office of the judge of probate, and *from such report and other proof* relating to any estate before the judge of probate, the judge of probate shall forthwith, as of course, determine the clear market *value of all estates as of the date* of transfer * * *." MCL 205.213; MSA 7.574 (Emphasis added.)

The date of transfer and the date on which the tax accrues is the date of death. MCL 205.203, 205.204; MSA 7.564, 7.565.

Thus, the act requires that these flower bonds be appraised at their clear market value as of the date of death. Although "clear market value" has not been defined by the Legislature, we are satis-

fied that the term can be fairly defined as the sum a willing buyer, not compelled to buy, and a willing seller, not compelled to sell, would agree upon.[5]

Further insight into the requirements of the inheritance tax act may be gleaned from an examination of *In re Fish's Estate,* 219 Mich 369; 189 NW 177 (1922). Rejecting the argument that Federal estate taxes should be deducted when computing the inheritance tax, this Court said:

"It will, therefore, be seen, although the language quoted is found in different sections and the arrangement of it might be improved, that the State by this act has levied an inheritance tax upon the clear market value of the property at the time of death and that it is then due and payable. The tax is measured not by the value of the right, but by the value of the property transferred; not by what it is worth when it reaches the possession of the beneficiary, but by the clear market value at the instant of death; not what it will net him after deducting expenses and lawyers' fees, but by its clear market value at the date of transfer. The legislature must be deemed to have used the expression 'clear market value' in its commonly accepted meaning." *Id.,* 377-378.

The *Fish* analysis indicates that the Legislature intended asset appraisal to be based on the commonly accepted meaning of "clear market value". It is unlikely that one can perceive a clearer indication of market value than the bid and asked prices of the bond market. Even as the *Fish* Court excluded consideration of the Federal estate tax obligation, we are not bound by the actual value of the flower bonds to the McCornack estate for Federal estate tax purposes when determining

---

[5] *E.g.,* Black's Law Dictionary (4th ed), pp 318, 716. Both parties have accepted this commonly phrased definition.

their "clear market value" for state tax purposes. The Legislature based the amount of its transfer tax upon the "clear market value" of the estate as of the date of death. The actual value of the property to the estate and its beneficiaries when the bonds are used to pay the Federal tax is irrelevant for purposes of determining Michigan inheritance tax liability.

## II

This same issue has been before the appellate courts of several other jurisdictions. For purposes of the Federal estate tax, flower bonds are valued at par to the extent that they are redeemable at par value. *E.g., Bankers Trust Co v United States,* 284 F2d 537 (CA 2, 1960), *cert den* 366 US 903 (1961); Rev Rul 69-489, 1969-2 Internal Revenue Cumulative Bulletin, p 172. Five states also assign flower bonds their face value if redeemed.[6] Creating a slight majority, seven other states look to the over-the-counter bond market to determine the market value of flower bonds.[7] In the 1978 case of *In re Estate of Kaufman* (cited in fn 7), the Ohio Court faced an even more difficult problem. Al-

---

[6] *In re Estate of Rosenfeld,* 62 Cal 2d 432; 398 P2d 783 (1965), *In the Matter of the Estate of Behm,* 19 AD2d 234; 241 NYS2d 264 (1963), aff'd 14 NY2d 826; 251 NYS2d 475; 200 NE2d 457 (1964), *Stanback v Coble,* 30 NC App 533; 227 SE2d 175 (1976), *cert den* 291 NC 177; 229 SE2d 690 (1976), *Clapp v Cass County,* 236 NW2d 850 (ND, 1975), *In the Matter of the Estate of Eggert,* 82 Wash 2d 332; 510 P2d 645 (1973). All the relevant cases on this subject are discussed in Anno: *Valuation of United States Treasury Bonds for State Inheritance or Estate Tax Purposes,* 62 ALR3d 1272.

[7] *Stein v State Tax Comm,* 99 Idaho 70; 577 P2d 798 (1978), *Second National Bank of Richmond v Dep't of State Revenue,* — Ind App —; 366 NE2d 694 (1977), *In re Estate of Voss,* 55 Ill 2d 313; 303 NE2d 9 (1973), *In the Matter of the Estate of Power,* 156 Mont 100; 476 P2d 506 (1970), *In re Estate of Kaufman,* 53 Ohio St 2d 231; 374 NE2d 142 (1978), *In the Matter of the Estate of Beadle,* 4 Or App 477; 479 P2d 256 (1971), *In the Matter of the Estate of Aul,* 154 W Va 484; 177 SE2d 142 (1970).

though the statutory definition of "market value" stated that "[a]ll relevant facts and elements of value as of the valuation date shall be considered in determining such value", Ohio Rev Code 5731.01(B), the Ohio Court still found for over-the-counter market valuation. The asserted basis for the decision was that it reflected the required market value, while the par value reflected actual value.

The rationale of the cases which have adopted par value does not persuade us to follow their lead. Two of those states have express policies of conforming their methods of estate valuation to the Federal valuation. *In the Matter of the Estate of Behm,* 19 AD2d 234; 241 NYS2d 264 (1963), *aff'd* 14 NY2d 826; 251 NYS2d 475; 200 NE2d 457 (1964), *Stanback v Coble,* 30 NC App 533; 227 SE2d 175, *cert den* 291 NC 177; 229 SE2d 690 (1976). Michigan has no such policy.

The three other state opinions and the Federal cases rely upon an expansive definition of market value provided by statute, administrative regulation or judicial interpretation. These definitions allow consideration of all "relevant facts and elements of value" when appraising the market value of estate assets. *Bankers Trust, supra, In re Estate of Rosenfeld,* 62 Cal 2d 432; 398 P2d 783 (1965), *Clapp v Cass County,* 236 NW2d 850 (ND, 1975), *In the Matter of the Estate of Eggert,* 82 Wash 2d 332; 510 P2d 645 (1973). Again, there are no statutes or regulations promulgated in this state which even suggest that consideration should be given to facts other than the bond market prices. Similarly, the much-quoted analysis in *Fish's Estate,* set forth in Part I, *supra,* leaves no room for

the majority's expansive judicial interpretation of MCL 205.213(1); MSA 7.574(1).[8]

In *Eggert, supra,* the Washington Court also stated that the United States Government provided a second market (beyond the over-the-counter bond market) for flower bonds; therefore, redemption at par value could be considered when determining market value. We see little persuasive force in this position. The term "market value" presumes an open market where prices will be set by unfettered economic forces. Mr. Justice Vogel, dissenting in *Clapp v Cass County,* 236 NW2d 850, 859 (ND, 1975), places this argument in the proper perspective:

"To say that there are two markets, and that one of them is the United States Government, is to ignore the fact that such a 'market' is open to only one particular type of holder, who must die to take advantage of it, and that there is only one buyer, while at the same time there is a genuine market, with many buyers and sellers and an established price elsewhere."

Accord, *Stein v State Tax Comm,* 99 Idaho 70, 71; 577 P2d 798, 799 (1978), *Second National Bank of Richmond v Dep't of State Revenue,* — Ind App —, —; 366 NE2d 694, 696 (1977), *In the Matter of the Estate of Aul,* 154 W Va 484, 489; 177 SE2d 142, 145 (1970).

We are as impressed with the logic of the seven courts[9] which have adopted the bond market valuation of flower bonds as we are unpersuaded by the opposing view. Central to these holdings is the

---

[8] MCL 205.213(1); MSA 7.574(1) is quoted in relevant part in fn 2, *supra.* We see no basis for construing the words "other proof" in this section to encompass the redemption price (face value). "Other proof" relates to proof of market value and the redemption price is reflective of actual value.

[9] See the cases cited in fn 7, *supra.*

recognition that the terms "clear market value",
"fair market value" or "market value" preclude
consideration of the actual value of estate property
to the beneficiaries.

The Legislature has chosen to utilize a uniform
standard when computing its tax. Market value as
of the date of death is that standard.

## III

The majority asserts that when an executor
redeems flower bonds the estate is a willing seller
and the Federal government a willing buyer.
While in one sense this may be true, but see *Stein,
supra, Second National Bank, supra, Estate of Aul,
supra,* this is too simplistic a view of market value.
Use of the term presupposes an open market,
accessible to any willing buyer or seller. Such is
clearly not the case with redemption of flower
bonds—that is a closed market with a predeter-
mined price designed to promote the sale of
United States Treasury bonds.

Our brethren's opinion sets the stage for extend-
ing its rationale to situations where the actual
value of an asset to the estate is more than or less
than its value as determined by free market
forces. Such an extension would be contrary to the
express legislative command to appraise assets at
their clear market value. Utilization of a single,
uniform standard of valuation is a wise legislative
decision which we will not contravene. Further, we
agree that the "clear market value" is not a
market open only to one who must die in order to
take advantage of it and where there is only one
buyer.

We would reverse the Court of Appeals and

reinstate the decision of the Wayne County Probate Court.

WILLIAMS and RYAN, JJ., concurred with COLEMAN, C.J.