In the Matter of the Estate of Martha W. Glessner

*v.*

Donald C. Carman, *State Tax Commissioner*

(No. 12055)

Submitted January 24, 1961.   Decided March 28, 1961.

*W. W. Barron, Attorney General, Henry C. Bias, Jr., Assistant Attorney General, Paul M. Friedberg, Hobart Richey, Special Assistant Attorneys General,* for plaintiff in error.

*Schmidt, Laas & Schrader,* for defendant in error.

Browning, Judge:

Martha W. Glessner, a resident of Wheeling, Ohio County, West Virginia, died February 17, 1956. By her will, which was duly admitted to probate, she made specific bequests to various individuals and provided further that her executor should pay all inheritance and estate taxes that might be assessed against any

beneficiary. On December 11, 1956, her executor prepared and filed with the State Tax Commissioner the required Inheritance Tax Return, and paid the inheritance tax believed due. The amount of the tax was computed by applying the applicable statutory rate to the amount of the specific bequest. On January 7, 1957, an additional amount of tax was paid to the Tax Commissioner after a preliminary audit. Subsequently, on April 16, 1957, the executor applied for a refund of a portion of such taxes on the ground that the amount of Federal Estate Tax actually paid exceeded the amount claimed as a deduction on the Inheritance Tax Return. There followed several conferences and some correspondence between the parties until January 26, 1960, when the Tax Commissioner, by letter, informed the executor that the full amount of Federal Estate Tax paid was allowable as a deduction in computing the West Virginia inheritance tax. In the same letter, however, in recomputing the West Virginia inheritance tax, the Tax Commissioner treated the tax due upon each bequest, which the executor was directed to pay out of the residual estate, as an additional bequest, thus imposing a "tax on a tax ad infinitum", and assessed a deficiency in the inheritance tax due in the amount of $3,061.90. The plaintiff, Wheeling Dollar Savings & Trust Company, as executor of the Last Will and Testament of Martha W. Glessner, then petitioned the Circuit Court of Ohio County, under the provisions of Code, 11-11-21, praying for an exoneration of such alleged deficiency.

On the trial of the case, the plantiff introduced the testimony of trust officers of three of Wheeling's largest banks, all of whom testified that they had no knowledge of the method of computation used by the Tax Commissioner until, at the earliest, 1958, and that, since 1958, that method had been applied in some instances and disregarded in others.

The Tax Commissioner introduced the testimony of the Supervisor of the State Tax Department who testified that the instant method of computation had

been used by the department for at least five years, and that: Such procedure is not set forth in writing; is not recorded in the Secretary of State's office under the provisions of Code, 5-2-3; and is not set forth in any instructions or brochures which are sent out to fiduciaries to assist them in the preparation of inheritance tax returns.

The trial court, in a memorandum opinion, found for the plaintiff on the grounds that the "imposition of a tax upon a tax 'ad infinitum' was improper and unwarranted.", and even if otherwise proper was improper in the instant case for failure to give proper notice, and entered judgment granting the relief prayed for on May 23, 1960, to which judgment this Court granted a writ of error on July 11, 1960.

The sole issue for determination by this Court is whether the Tax Commissioner has the authority under the provisions of Article 11, Chapter 11, of the Code of this State to impose a tax upon the transfer of property by the terms of the Glessner will in a larger amount, since the will provided that such a tax would be paid from the estate of the testatrix, than could have been assessed against such propery if no such provision had been contained in the will. Code, 11-11-1, as amended, a very long section, begins with this language: "A tax, payable into the treasury of the State, shall be imposed upon the transfer, in trust, or otherwise, of any property, or interest therein, real, personal, or mixed, if such transfer be: (a) By will or * * *."

Section 2, entitled "Primary Rates", relates to the specific transfer of property where the value of each transfer does not exceed $50,000.00. Different rates are established depending upon the relationship by blood of the devisees or legatees to their benefactor ranging from three per cent for a near relative to ten per cent for a beneficiary who is of no blood relationship to the decedent, and in each category the per centum rate of the tax is upon "the market value of such interest in such property."

Section 3 is entitled "Rates on Excess Market Value", and relates in part to transfers by bequest or otherwise "When the market value of any such property exceeds fifty thousand dollars, * * *." The tax rate upon such transfer is higher in each classification set up under Section 2. For example: If a stranger to the decedent received a bequest of $50,000.00 the rate is ten per centum of the market value of the property transferred, whereas if the value of the property is in excess of $50,000.00, but less than $150,000.00, the tax is at the rate of twelve per centum.

Section 4 is entitled "Exemptions" and provides, among other exempt transfers, that devisees or legatees within certain degrees of relationship stated therein shall receive property of varying values tax free. For example: A widow, or a widower, is entitled to an exemption of $15,000.00.

Section 5 is entitled "Determination of Market Value", the first sentence of which is pertinent: "The market value of property is its actual market value after deducting debts and encumbrances for which the same is liable, and to the payment of which it shall actually be subjected. * * *"

The decedent by her will, after making several substantial charitable bequests that are exempt under the applicable statutory provisions, bequeathed her personal property to a sister, Ellen W. Wilson, which was appraised at $5,126.00, and made eight bequests of a sum equal to five per cent of her net estate, but not to exceed the sum of $50,000.00, seven to nieces and nephews, and one to Lillian H. Wilson, a stranger, as defined by statute. The Tax Commissioner imposed what the plaintiff refers to as "a tax upon a tax ad infinitum" upon each of these nine bequests. The mathematical formula by which the amount of the tax was fixed as to these bequests can best be illustrated by reproducing the figures applicable to Lillian H. Wilson, the stranger, this table being contained in briefs of both counsel for the plaintiff in error and the defendant in error:

| | | |
|---|---|---:|
| 10% | on | $50,000.00 |
| 12% | on | 5,000.00 |
| 12% | on | 600.00 |
| 12% | on | 72.00 |
| 12% | on | 8.64 |
| 12% | on | 1.04 |
| 12% | on | .13 |
| 12% | on | .01 |
| | | $55,681.82 |

| | |
|---|---:|
| (The bequest) | $5,000.00 |
| (Tax on the tax) | $600.00 |
| (Tax on the tax) | 72.00 |
| (Tax on the tax) | 8.64 |
| (Tax on the tax) | 1.04 |
| (Tax on the tax) | .13 |
| (Tax on the tax) | .01 |
| (Tax on the tax) | .00 |
| | $5,681.82 |

The same formula was used as to the other eight bequests, except that the rate of the tax differed because of the relationship between the legatee and the decedent.

The total net taxable estate was appraised at $1,246,367.03, the specific bequests, including certain charitable non-taxable bequests, amounting to $735,126.00. The executor paid to the Tax Commissioner the sum of $28,813.89, the amount it considered the proper tax, less a statutory discount, upon the specific bequests. Then the latter sum was added to the figure $735,126.00, the figure representing the total of the specific bequests, and the sum thereof was deducted from the amount of the net estate leaving a residue of $482,427.14, the disposition of which is not material to this litigation except to show that there were sufficient funds in the residue of the estate to pay all taxes due against it as directed by the testatrix. However, it should be noted that the residue which was

conveyed in trust was taxed in the manner provided by statute according to the relationship of the life tenants and the eventual distributees. The taxable specific bequests totaled $405,126.00 and, upon the Tax Commissioner's ruling that the sums necessary to pay the taxes upon these bequests were also taxable bequests, the sum of $32,818.45 was added making, according to his computation, specific bequests in the sum of $437,944.44. It was upon this additional sum that the Tax Commissioner found a deficiency to exist in the amount of $3,061.90. There are some slight variations in some of the above figures as between the record and briefs of counsel, apparently because of subsequent adjustments or mathematical calculations which are of no significance upon the issue before this Court. The Tax Commissioner contends that since the amount of the tax on the specific bequests, $28,813.89, was deducted from the net estate it, therefore, was not taxed as a part of the residue, and the trial court's decision results in that sum not being taxed in any category.

The question here presented is one of first impression in this jurisdiction, but it has been decided by other courts of last resort. *In re Irwin's Estate,* 196 Cal. 366, 237, P. 1074; *In re Lavalley's Estate,* 191 Wis, 356, 210 N. W. 941; *In re Bowlin's Estate,* 189 Minn. 196, 248 N. W. 741; *Bouse v. Hutzler,* 180 Md. 682, 26 A. 2d 767, 141 A.L.R. 843; *In re Henry's Estate,* 189 Wash. 510, 66 P. 2d. 350; 61 C.J., Taxation, Section 2589; 85 C.J.S., Taxation, S e c t i o n 1182. The language of the statutes and the facts in the Maryland case, *Bouse v. Hutzler,* and the Washington case, *In re Henry's Estate,* are such that they might be distinguished from the case before this Court, but it is apparent that the weight of authority is on the side of the Tax Commissioner. The courts of last resort of forty-three of the states, including West Virginia, have not heretofore had occasion to pass upon this question. In *In re Irwin's Estate,* 196 Cal. 366, 237 P. 1074, decided in 1925, a son-in-law was bequeathed $100,000.00 in decedent's will "free and clear after all inheritance

taxes, which I direct to be paid from the residue of my estate.'' In the opinion the court said that the actual value of the property transferred to the legatee was not $100,000.00 but $107,602.27 which was the amount necessary to give the legatee $100,000.00 after payment of the inheritance tax thereon. Succinctly was the rule laid down in the opinion of that case which has been followed by some other courts and which the Tax Commissioner asks this Court to adopt. ''In short, by making the payment of the tax payable out of the residue of the estate, the legatee was bequeathed an additional amount sufficient to pay the tax and the tax upon the tax ad infinitum.''

*In re Loeb's Estate,* _____ Pa. _____, 162 A. 2d. 207, decided in 1960, is contrary to the other cases heretofore cited upon this question. The language of the opinion in that case would indicate that the court relied primarily for its decision upon the administrative interpretation of the Pennsylvania statute for a period of thirty-nine years, and struck down the ruling then recently adopted by the taxing authority of that state by which the tax on the tax *ad infinitum* was attempted to be applied. However, the language of the opinion indicates that the same decision might have been rendered in the absence of any history of administrative interpretation. For example, the court said: ''The Revenue Department contends that the 'clear value' of a tax-free gift of $100,000.00 passing to a collateral pecuniary legatee is *clearly not* $100,-000.00, but is *clearly* $117,647.05. We are convinced that the language meaning and intent of the Act is clear and that the Department's new interpretation is not in accordance with, but is an unreasonable distortion of the language, the meaning, and the intent of this Act.''

The defendant in error contends that the method of computing the tax in this case is of recent origin and that weight should be given to the administrative interpretation to the contrary for many years prior thereto. The learned trial judge, in his written opinion,

referred to the change of method of computing the tax by the Tax Commissioner without complying with the provisions of Code, 5-2-3, as amended, which requires all state agencies to file with the Secretary of State two copies of "all of its lawfully adopted rules" for at least 30 days prior to the attempted enforcement thereof. That section has this provision: "* * * The word 'rule' includes every regulation, standard, or statement of policy or interpretation of general application and future effect, including the amendment of or repeal thereof adopted by any agency, as herein defined, to implement or make specific the law enforced by or administered by it, or to govern its organization or procedure, * * *." As heretofore noted, no "rule" of any kind was ever filed with the Secretary of State by the Tax Commissioner. However, as heretofore noted, Mr. Bailey, the Supervisor of the Inheritance Tax Division of the Tax Commissioner's Office, testified that the method of computing the tax in question had been in effect, to his knowledge, for a period of five years, and, upon information, he believed that his predecessor had, for some undefined time prior thereto, enforced such a regulation. This Court is of the view that the statutory section above referred to has no application to this case, and that there has been no administrative interpretation of the applicable statute that is controlling one way or the other.

This Court finds itself faced with the difficult task of construing our statute to determine whether its language is such that it expresses the intent of the Legislature that a tax should be imposed upon the specific bequests under this will as determined by the Tax Commissioner. The decisions of courts of last resort of other states are persuasive, but they are, of course, not controlling. It would be interesting indeed to know the reaction of Martha W. Glessner, if communication could be had with her, if she were informed that she did not bequeath $50,000.00 to Lillian H. Wilson, but bequeathed instead the sum of

$55,681.82, the sum of $5,681.82 being the amount necessary to pay the tax on a bequest of $50,000.00. But if our statute says that is what she did whether she intended to or not, that is the end of the matter. All citizens are subject to the law and they must submit to it no matter how unpleasant, or even inequitable, it may seem. Unless our statute is so interpreted $28,-813.89 of the Glessner estate may escape being taxed. If such be the case then the remedy therefor would lie exclusively with the Legislature. As heretofore noted our statute does not provide that every dollar of an estate shall be subjected to the inheritance tax. For example: $15,000.00 is exempted when the devisee is a close relative. In the recent case of *Cuppett v. Neilly, et al.*, (1958), 143 W. Va. 845, 867, 105 S. E. 2d 548, this Court held, as the 16th Syllabus Point clearly provides, that: "A testator may specify which property or class of property shall bear the burden of the tax for which his estate is liable and may direct that the residuary estate or other funds be used for the payment of such tax, but such direction must be clearly expresssed in the will."

There is, of course, no provision in Article 11 that the assets of the estate which are used to pay the estate taxes shall be taxed *ad infinitum* as the Tax Commissioner has directed in this case. His position can be sustained by this Court only by further construing the applicable statutory provisions to achieve that result. It is true that Section 5 of Article 11, as amended, defines the interest in the property to be taxed thus: "The market value of property is its actual market value after deducting debts and encumbrances for which the same is liable. * * *" Code, 11-11-12, after directing that fiduciaries and others required to do so, shall pay the taxes "upon the market value of all the property subject to tax", contains this sentence: "Such payment shall be made out of such estate in the same manner as other debts may be paid." The terms "bequests", "debts" and "encumbrances" are certainly not synonymous. To reverse the finding of the trial

court and adopt the interpretation of Article 11, which the Tax Commissioner urges upon us in the instant case, we must find in the language therein the intent to provide that all sums necessary to pay the inheritance taxes upon the specific bequests would be both debts against the estate and bequests to the legatees. To revert to the example used with regard to the legatee Lillian H. Wilson, the $5,000.00 tax on the $50,000.00 bequest must be construed to be not only a debt against the estate which she could enforce if the residue of the estate was sufficient to satisfy that demand after the "debts and incumbrances" against the estate had been satisfied but that the same principle would apply to the $600.00, the $72.00, the $8.64, the 1.04, the .13 and the .01 which are contained in the table heretofore reproduced. This Court cannot find words in Article 11 from which it can be concluded that such was the intent of the Legislature in enacting this legislation. These statutory provisions do not have the elasticity which will enable this Court, by exercising its power of interpretation and construction, to give the effect to the language used therein which the Tax Commissioner advocates.

We do not have before us the question of whether in such a situation as is presented by this record the $28,813.89, which was removed from the residuary estate to pay the taxes on the specific bequests, could or should have been taxed at the applicable rate before it was used for that purpose. Such a case is not before us and we cannot, of course, decide it, but to suggest such a possibility is only to point to the obvious ambiguity which exists in the applicable statutory provisions. The rule is well established in this jurisdiction and elsewhere that tax levying statutes are, in case of doubt, to be construed strongly against the government and in favor of the taxpayer. This Court recently reiterated that principle in *State ex rel. Lambert v. Carman*, 145 W. Va. 635, 116 S. E. 2d 265.

The judgment of the Circuit Court of Ohio County will be affirmed.

*Affirmed.*