572 P.2d 869

**ESTATE of Harry W. MORRISON, Plaintiff-Respondent,**

v.

**IDAHO STATE TAX COMMISSION, Defendant-Appellant.**

**No. 12242.**

Supreme Court of Idaho.

Dec. 23, 1977.

J. Michael Kinsela, Asst. Atty. Gen., Wayne L. Kidwell, Atty. Gen., Boise, for defendant-appellant.

Philip E. Peterson, Lewiston, for plaintiff-respondent.

BAKES, Justice.

Harry W. Morrison holds a unique place in Idaho's industrial history. Morrison-Knudsen Co., Inc., the company he cofounded, has been associated with construction and engineering projects throughout the world. It was this company, which was the principal source of Morrison's wealth. When he died in July of 1971, he left an estate worth in excess of $6,000,000, a substantial portion of which was represented by shares of MK stock.

This appeal presents two issues concerning the taxation of the distribution of that estate. The first centers upon the valuation of the stock for inheritance tax purposes. The second presents the question: if a will provides that the estate's residue shall pay the inheritance taxes owed by specific distributees, are these taxes considered part of the heirs' distributions which are themselves subject to tax?

I

## THE VALUATION OF STOCK

The Morrison estate included 266,662 shares of MK stock. This was approximately 11.29% of the 2,362,763 shares of MK stock outstanding at Morrison's death. On the date of Morrison's death, the midpoint between the bid and asked price of MK stock traded on the Boise over-the-counter market [1], was $17.6875 per share, while the representative asked closing price given by the National Quotation Bureau was $18.25 per share.

The stock was initially valued in the estate proceedings for both estate and inheritance tax purposes at $17.6875 per share. When the State Tax Commission asserted an additional tax deficiency because the estate had failed to compute the tax on the entire bequest, including the inheritance taxes paid by the estate, the estate moved to amend its inheritance tax return to value these shares for inheritance tax purposes at $15 each. This amendment was based upon the estate's application of the so-called "blockage" rule. According to the estate, the blockage rule is a valuation procedure used to determine the value of blocks of stock larger than the amounts of that stock normally traded. As the estate has characterized the rule in its brief, it is a determination of the "value that would have been realized had the stock been sold on the only market upon which it could have been sold within a reasonable time, in effect the wholesale as opposed to the retail market," i. e., a rule based upon the price which one could have obtained by selling the stock in the existing market when there may be no willing buyers of such large blocks of stock in the existing market. The administrator of the Inheritance Tax Division declined to revalue the stock in accordance with this rule.

The estate appealed to the State Tax Commission which also refused to apply the

---

1. Subsequent to Morrison's death, Morrison-Knudsen stock was listed on the New York Stock Exchange.

blockage rule urged by the estate. From that decision, the estate appealed to the district court. Before the district court the parties entered into a pretrial order containing the following stipulation of fact:

"(e) The inventory submitted by estate appraisers and the original inheritance tax return filed fixed a value of $17.6875 per share for Morrison-Knudsen stock. This was the mid-point price between bid and asked on the Boise over-the-counter market. The amended return reported a total value that equated to $15.00 per share as a result of application of the blockage rule. The per share discount of $3.25 per share used by Mr. Will Richeson, Jr., the appraiser, was applied to a unit value of $18.25 per share, 'the representative closing asked price' reported by the National Quotation Bureau on July 19, 1971, the date of death and not to the $17.6875 a share originally reported. *The appraisal report supporting application of the blockage rule is a proper application of that rule if that rule can be properly applied in this or any other case.*" (Emphasis added).

Mr. Richeson's letter, which was attached to and made a part of the pretrial order, contained the following statement:

*"In placing a value on large blocks of stock traded Over-The-Counter,* we generally consider, among other things, the number of shares involved, the number of firms making a trading market in the stock and the daily volume and price movement in the stock. . . .

". . . [W]e believe the following general guidelines would apply in this case. *Large blocks of shares of unlisted companies are valued at discounts* from the quoted market of the publicly traded shares, *because of their lack of liquidity.* These discounts normally range from 10%–20% for relatively low multiple companies with large capitalizations, to 25%–40% for more thinly capitalized companies with volatile shares. *Based solely on the foregoing,* it is our opinion that Morrison-Knudsen would fall in the range for low multiple companies with large capitalizations and that a fair and

reasonable value for the said shares on July 19, 1971, would be at a $3¼ per share discount from a representative closing asked price of $18¼ on that day, which has been supplied to us by the National Quotation Bureau, *resulting in a total value of $3,999,930 for the 266,662 shares, or $15. a share.*" (Emphasis added).

The facts in this case were stipulated and therefore the district court did not make findings of fact. It entered a memorandum opinion which is sufficient to serve as its conclusions of law. *See* I.R.C.P. 52(a). In that opinion it described the blockage rule as one allowing "a large block of stock [to] be appraised at its market value on the date of death as a block sold over a reasonable period of time." The court then concluded that this blockage rule was legally acceptable and, based upon the stipulation contained in the pretrial order, determined that it should be applied. The State Tax Commission has assigned this application of the blockage rule as error.

The starting point in our analysis is I.C. §§ 14–401 *et seq.*, the Idaho Transfer and Inheritance Tax Act. These statutes clearly provide that although the Idaho inheritance tax is collected by the estate upon property which was once in the decedent's estate, I.C. §§ 14–401, –402, –413, the tax is not levied upon the value of the property in the estate or the value of the property in the estate less deductions and exemptions, but instead it is levied upon the value of a distributee's share of the estate less the distributee's deductions and exemptions, I.C. §§ 14–406, –407, –408, –413. Thus, in calculating the inheritance tax due on one distributee's share, one considers only the property received by the distributee, not all the property present in the entire estate. To do otherwise would transform this tax from an inheritance tax to an estate tax and be contrary to the provision of statute.

The record before us does not disclose whether the 266,662 shares of MK stock in the Morrison estate were given to a single

distributee or to several distributees.[2] Thus, it is clear that if a blockage rule for the valuation of stock can be applied, it cannot be applied to the total block of stock in the estate because the inheritance tax is not levied on the total block, but must instead be applied to each block of stock received by each distributee and each block of stock must be valued separately.

■ The valuation procedure followed by the estate's appraiser, Mr. Richardson, applied the blockage rule to the entire block of 266,662 shares of stock in the estate, rather than the block which each distributee received. This was erroneous, in spite of the stipulation of the parties that his ". . . appraisal report . . . is a proper application of that [the blockage] rule if that rule can be properly applied in this or in any other case . . . ." If a blockage rule can be applied, it may only be applied to each distributee's individual block. The valuation of all the stock in the estate as a single block was incorrect. *Cf. Rushton v. Commissioner of Internal Revenue,* 498 F.2d 88 (5th Cir. 1974), which concludes that gifts of stock to several donees may not be blocked together as one gift for valuation for federal gift taxes. Thus, we must decide whether a blockage rule of the kind described by the estate in its brief and the district court in its decision may be applied under the relevant statutes to each individual distributee's block of stock.

I.C. § 14–402 provides the following: "14–402. Transfers of property subject to tax—Determination of market value. —A tax shall be and is hereby imposed upon the transfer of any property, . . said taxes to be upon the market value of such property . . . ."
Neither this statute nor any other statute in the Transfer and Inheritance Tax Act further defines market value. Nor has this Court previously defined that term in the process of construing the statute. Thus, we

must define the term market value as used in this statute in order to determine whether the so-called "blockage rule" may be applied in determining the value of a distributee's share of the stock.

Ordinarily market value is defined as the price at which a hypothetical seller, desiring to sell the property but being under no compulsion to do so, and a hypothetical buyer, desiring to buy the property but being under no compulsion to do so, would agree to exchange the property. *See* Black's Law Dictionary 1123 (4th ed. 1957); *In re Rowell's Estate,* 132 Cal.App.2d 421, 282 P.2d 163 (1955); *In re Sears' Estate,* 172 Ohio St. 443, 178 N.E.2d 240 (1961); *Kingery v. Dept. of Revenue,* 554 P.2d 471 (Or. 1976). The essence of this definition lies in the symmetry between the selling and the buying party—it is assumed that there will be both a seller willing to sell and a buyer willing to buy the property in question, neither of whom is under any compulsion to enter into the transaction. However, the "blockage" rule contained in the appraisal report stipulated to by the parties and contained in the pretrial order of the district court assumed that there would be no ready market for larger blocks of stock, and thus the price must be discounted.

■ However, it does not necessarily follow that merely because there are large blocks of stock the price should be discounted. Indeed, the State Tax Commission could just as logically argue that one should look at the transaction as a buyer seeking to purchase a large block of stock when there was no seller willing to sell at the OTC price on the given day, and thus would have to pay a premium rather than a discount. A tender offer typically results in such a premium price for large blocks of stock. *See Rushton v. Commissioner of Internal Revenue, supra;* 26 C.F.R. §§ 25.-2031–2032(e), –2512–2512(e), for further

---

2. The question of the number of distributees came up at oral argument, and was not apparent in the record. Subsequently, counsel for respondent advised the Court by letter, with a copy to the Attorney General, that gifts of stock were made to ten (10) distributees. The

Attorney General has not contested that statement. However, even such an augmentation does not indicate the amount of stock contained in the individual bequests, or the exempt status of any distributee.

discussions of factors which might lead to valuing stocks at premiums or discounts.

There are other market forces which can change the sales price per share of large blocks of stock from the sales price per share of smaller blocks, e. g., when the block passes effective control of the corporation; in a closely held corporation, when the block does not pass effective control but leaves the buyer at the mercy of another with an even larger share of stock; when the transfer of the shares is likely to change dividend or management policy of the corporation, or any other reason which might affect the selling price of the large block. In such a case, where one party or the other has shown that there are market forces which would increase or decrease the selling price per share for large blocks of stock from that for lesser blocks of stock commonly traded, the finder of fact may take into account these market forces in arriving at market value. However, the presence of such market factors may not be presumed, and in the absence of proof of such factors the general definition of market value, which assumes both a willing seller and a willing buyer, must control. Thus, while a "blockage" concept is appropriate under proper circumstances, the "blockage" rule described in the appraisal report which the parties stipulated to in this case and which assumed that "large blocks of shares of unlisted companies are valued at discounts from the quoted market of the publicly traded shares, because of their lack of liquidity," was not necessarily correct. Furthermore, it was erroneous because it was applied to the entire block of stock in the estate, rather than to each distributee's share.

■ However, because market value is basically a factual issue, and because the parties have stipulated that "the appraisal report . . . is a proper application of [the blockage rule] . . . if that rule can be properly applied in this or any other case . . . ,"[3] we affirm that portion of

the district court's order reversing the tax commission's determination of the value of the MK stock. However, we expressly disapprove the rationale upon which the appraisal was based.

## II

## THE RESIDUE'S PAYMENT OF TAXES

In addition to the specific bequests of stock, Morrison's will made a number of specific bequests of money. The will further provided that all the taxes upon these bequests were to be paid from the residue of the estate, i. e., the bequests paid to the distributees would not be reduced by any inheritance taxes due on the bequests. The State Tax Commission contended that the payment of taxes by the residue on behalf of a distributee was part of that person's distribution so that the total amount of distribution subject to tax must include this portion of the residue in addition to the amount paid to the distributee. The estate also contested this ruling in the appeal to the district court. The district court concluded that the payment of tax from the residue was not itself a transfer subject to tax. The State Tax Commission has also appealed from that ruling.

As before, the starting point in our analysis must be the statutes imposing the inheritance tax. The relevant statutes, I.C. §§ 14–401, –402 and –414, provide the following:

"14–401. Title of act—Terms defined.—This act shall be known as the 'Transfer and Inheritance Tax Act.'

"The words 'estate' and 'property' as used in this act shall be taken to mean the real and personal property or interest therein of the [decedent] passing or transferred to individual legatees, devisees, heirs, next of kin, grantees, donees, vendees or successors, and shall include all personal property within or without the state or subject to the jurisdiction thereof; . . .

---

3. This stipulation was carried over into the pretrial conference order, and the district judge in his memorandum opinion assumed that the

appraisal report was correct, based upon the stipulation and the pretrial order.

"The word 'transfer' as used in this act shall be taken to include the passing of property or any interest therein, in possession or enjoyment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift or appointment in the manner herein described. . . ."

"14–402. Transfers of property subject to tax— . . . —A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed, or of any interest therein or income therefrom in trust or otherwise, to persons, institutions or corporations, not hereinafter exempted, . . . ."

"14–413. Deduction of tax from legacy— . . . 1. Any administrator, executor, or trustee having in charge or trust any legacy or property for distribution, subject to the said tax, *shall deduct the tax therefrom*, or if the legacy or property be not money *he shall collect the tax thereon*, upon the market value thereof, *from the legatee or person entitled to such property*, and he shall not deliver, or be compelled to deliver, any specific legacy or property subject to tax to any person until he shall have collected the tax thereon; . . . ." (Emphasis added).

▪ First, the payment of inheritance taxes by the estate from the residue pursuant to provision in the will is clearly the transfer of property as defined by I.C. § 14–401 because it is the passing of an estate's property subject to the terms of a will. Because it is a transfer within the meaning of that section, I.C. § 14–402 will subject the transfer to the tax unless the transfer is otherwise exempted. I.C. § 14–408 lists the exemptions from inheritance taxation. Under that section the distribu-

tee of the transfer must first be identified in order to determine what exemptions from taxation, if any, are available for that transfer.

▪ The next question we must decide is, therefore, who is the distributee for state inheritance tax purposes of the distribution from the estate for payment of the inheritance taxes of the recipient of a specific bequest. There are only two possible answers to this question—either the state of Idaho is the distributee or the person whose taxes are being paid is the distributee. For the following reasons, we think the more reasonable conclusion is that the person whose taxes are being paid is the distributee.

First, I.C. § 14–413 clearly makes payment of the inheritance tax a debt of the distributee. A payment discharging a distributee's debt is in substance a gift to the distributee because the distributee has received the benefit of the payment. Indeed, the distributee not only has this beneficial interest in the payment; the distributee also has a legally enforceable interest in the payment because the distributee may sue to compel the estate to pay the tax if the estate declines to do so. These beneficial and legal interests in the money which the estate pays to the state of Idaho are certainly "the passing of property or any interest therein," I.C. § 14–401, or "the transfer of any property, . . . or of any interest therein or income therefrom in trust or otherwise," I.C. § 14–402, where the distributee is the person who benefits from the transfer. Thus, any payment from an estate discharging a debt of a distributee is in substance and for purposes of the Idaho Transfer and Inheritance Tax Act a gift to that distributee subject to tax.[4]

---

4. A possible exception to this general rule would be the situation in which a decedent in his will cancels a distributee's indebtedness to the decedent. In such a circumstance it could possibly be argued that the cancellation was both "income" subject to the income tax under 26 U.S.C.A. § 61(a)(12), *but see* 26 U.S.C.A. § 102(a), and I.C. § 63–3022, as "income from discharge of indebtedness," and also be a transfer subject to the inheritance tax, I.C. § 14–401,

–402. We do not decide today whether a cancellation of a distributee's debt to the decedent would necessarily be a gift within the meaning of the inheritance tax laws, or whether it would be income taxable within the meaning of the income tax laws, the cases suggesting that such a determination is a factual question to be decided based upon all of the circumstances. *Compare Commissioner of Internal Revenue v.*

We think a contrary holding would be untenable. If a transfer from an estate to the State Inheritance Tax Department, or for that matter to any other creditor of a distributee, were considered to be a gift to the state or the creditor rather than to the distributee, then that transfer would not necessarily discharge the distributee's liability for the tax or for the creditor's debt. If the transfer were a gift which the will provided that the distributee's creditor had a legal right to receive, then the creditor would be entitled to receive the transfer independently of its right to seek payment of the debt from the distributee. Such a payment would not as a matter of law discharge the debt; the debt would be discharged as a matter of law only if the transfer is considered as coming from the distributee. For this reason, also, we feel it is essential that the transfer be considered as a gift to the distributee rather than a gift to the state of Idaho; otherwise, the transfer would not necessarily discharge the distributee's tax liability to the state.

We recognize that the estate has cited cases with contrary holdings. *In re Loeb's Estate*, 400 Pa. 368, 162 A.2d 207 (1960); *In re Glessner's Estate*, 146 W.Va. 282, 118 S.E.2d 873 (1961). However, in these cases the courts did not discuss statutory schemes such as the one we have discussed in this case. Neither did those courts consider the question who was the distributee of the tax paid from the residue. Yet, in our analysis that question is of critical importance because the statute provides that all transfers except those specifically exempted are subject to tax. An exemption from taxation can only be determined after the distributee of the transfer has been identified. For that reason, these cases are not persuasive. Similarly, the cases relied on by the State Tax Commission are not persuasive. Although those cases arrived at the same result as we do concerning liability for taxes paid by the residue, they were not based on

an analysis of statutes similar to Idaho's and have not adopted the same reasoning we do.

Finally, the briefs of the parties and the decision of the district court devoted considerable discussion to the calculation of inheritance taxes. The discussion concerning calculation presented no issues of fact or law, so we have not discussed these calculations in the text. However, we have attached an appendix to this opinion to clarify the parties' and the district court's questions concerning these calculations.

Reversed and remanded. Costs to appellants.

McFADDEN, C. J., and DONALDSON, SHEPARD and BISTLINE, JJ., concur in Part I.

McFADDEN, C. J., and BISTLINE, J., concur in Part II.

SHEPARD and DONALDSON, JJ., dissent as to Part II.

## APPENDIX

The briefs and the memorandum opinion of the district court devote considerable discussion to the concept of calculation of taxes by "pyramiding." The estate has argued that the total tax could only be calculated in the following manner, called "pyramiding", which the estate argues is improper. Using an assumed gift of $1,000, and the tax on the distribution at a uniform rate of 10% with no exemptions and with the tax to be paid by the residue of the estate, then if this tax were considered part of the distribution subject to tax, the estate argues that the following "pyramiding" results:

| Payment | | Tax(1) | |
|---|---|---|---|
| Payment | $1,000.00 | Tax(1) | $100.00 |
| Tax(1) | 100.00 | Tax(2) | 10.00 |
| Tax(2) | 10.00 | Tax(3) | 1.00 |
| Tax(3) | 1.00 | Tax(4) | .10 |
| Tax(4) | .10 | Tax(5) | .01 |
| Tax(5) | .01 | Tax(6) | .00 |
| Total Gift | $1,111.11 | Total Tax | $111.11 |

*Jacobsen*, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1949), *with Helvering v. American Dental*

Co., 318 U.S. 322, 63 S.Ct. 577, 87 L.Ed. 785 (1943).

In this table, Tax(1) is the tax on $1,000.00, the amount of Payment to the distributee, Tax(2) is the tax on Tax(1), and so on. The final lines in this "pyramiding" example represent the total gift and tax if the estate's payment of tax is considered part of the gift.

The estate argues that the position taken by the state requires such a "pyramiding" of the tax, and thus is improper. But this, of course, begs the question decided in the text of the opinion—the question is whether the gift is only $1,000.00, or is the gift $1,000.00 plus the gift of taxes paid? Since we have held that the gift is not only $1,000.00, but is both the $1,000.00 and the taxes paid, "pyramiding" is a proper method of calculation of the tax, albeit an inefficient one. A better means of calculation of the tax would be to note the simple relation between the tax and the total bequest (which includes the tax); that the tax equals 10% of the total bequest; the relation between the tax and the amount paid to the distributee; and the tax and the amount paid equal the total bequest. Since the tax is 10% of the total bequest, the amount paid to the distributee is 90% of the total bequest; therefore, the tax is ⅑th of $1,000—the amount in the above example paid to the distributee, or $111.11. The record indicates that there are appropriate algebraic formulas available to compute the tax in more complicated situations involving graduated rates.

SHEPARD, Justice, dissenting.

I am in agreement with the reasoning of those decisions holding that the direction to pay taxes on a specific legacy out of the residuary is not a further gift or legacy, itself taxable, and therefore dissent from the majority opinion.

I must begin by observing that there is nothing in Mr. Morrison's will which in any way evidences the testator's intent to confer, in effect, two legacies on the legatees of M–K shares. There is no indication he intended one legacy of shares and one legacy out of the residuary to pay taxes on the transfer of those shares. Yet, this is clearly the result the majority opinion would impress on the will. That result, in my opinion, is at war with the plain words and import of the will. I would echo the incredulity of the Pennsylvania Supreme Court when In re Loeb's Estate, 400 Pa. 368, 162 A.2d 207 (1960), that Court rejected the interpretation adopted by the majority here:

> "The Commonwealth will seek in vain any language in the will that the testatrix intended to give to her legatees not the pecuniary legacy she clearly stated, but *that* amount *plus an additional legacy* in an amount unknown to her, but which is equal to the inheritance tax on the legacy which tax she clearly and specifically said should be paid out of the principal of the residuary trust." *In re Loeb's Estate*, 162 A.2d at 211.

Of course, if our statute requires this result, then the testator's contrary intent must give way. *In re Glessner's Estate*, 146 W.Va. 282, 118 S.E.2d 873, 877 (1961).

In examining the statute to find whether it is consonant with the view urged by the State and accepted by the majority opinion we note that its effect is to increase the tax bite which the State takes out of the total estate and that is not a neutral accounting device insofar as it affects the State's total revenue from this estate. In addition, the algebraic formula adopted by the Court in this case to compute the tax is one, the complexity of which ought to be suggested from the statute itself rather than be constructed from the judicial imagination. The conclusion that payment of the taxes on specific legacies is a further legacy depends on the majority's gratuitous observation that otherwise the payment to the state by the administrator would not discharge the tax obligations of the specific legatees. That observation is unsound both as a matter of general law and under our

inheritance statute in particular. In simplest terms, the majority's argument is that a debt owed by A to B cannot be discharged by full payment thereof by C, even when A consents and B accepts the money. The law, however, is no stranger to the proposition that this transaction does in fact result in the discharge of A's debt. 6 C. Corbin, Contracts § 1285 (1951); Restatement (Second) of Contracts § 150, Comment a, Illustration 1 (Tentative Drafts 1–7, November 21, 1972); 15 S. Williston, Contracts §§ 1857–61 (3d ed. 1972). The same is true of I.C. § 14–413. This statute expressly directs the administrator to pay those amounts due on the inheritances even though the obligation belongs neither to the estate whom the administrator represents nor the administrator personally, rather, and I doubt anyone would challenge this, the tax obligation is one that is laid upon the legatees for the privilege of receiving property from the decedent. I might add that the administrator is not the agent of the legatees. No one questions, moreover, that when the administrator pays the taxes that the legatees' obligation under law is extinguished. It needs to be emphasized that the administrator's actions in collecting money with which to pay the debt does not itself discharge the obligation, that is accomplished only by the final payment over to the state, a lesson the legatees would sadly learn if the administrator were to abscond with funds he had collected for the payment of the inheritances taxes. Under this statute, therefore, the actions of a third party do in fact discharge the legatees' tax obligation. The majority's ultimate conclusion depends upon a misconception, and has the unusual consequence of granting to the state even more in tax revenues than would be the case if taxes paid out of the residuary had been included in the legacies. My doubt about the majority's result is confirmed by its interesting formula. Search as one may in I.C. § 14–413,[1] that formula is not found in its words nor can it fairly be inferred from its general thrust. In this situation, I suggest the relevancy of the words of Justice Holmes in *Edwards v. Slocum*, 264 U.S. 61, 63, 44 S.Ct. 293, 68 L.Ed. 564 (1924), "Algebraic formulae are not lightly to be imputed to legislators." If our legislators had intended the use of the above formula, they would have spoken more clearly and the majority would not need to invent new legislation.[2]

DONALDSON, J., concurs.

1. "14–413. *Deduction of tax from legacy.— Sale of property for payment of tax.*—1. Any administrator, executor, or trustee having in charge or trust any legacy or property for distribution, subject to the said tax, shall deduct the tax therefrom, or if the legacy or property be not money he shall collect the tax thereon, upon the market value thereof, from the legatee or person entitled to such property, and he shall not deliver, or be compelled to deliver, any specific legacy or property subject to tax to any person until he shall have collected the tax thereon; and whenever any such legacy shall be charged upon or payable out of real estate, the executor, administrator, or trustee shall collect said tax from the distributee thereof, and the same shall remain a charge on such real estate until paid; if, however, such legacy be given in money to any person for a limited period, the executor, administrator, or trustee shall retain the tax upon the whole amount; but if it be not in money he shall make application to the state tax commission to make an apportionment, if the case require it, of the sum to be paid into his hands by such legatees, and for such further order relative thereto as the case may require.

"2. All executors, administrators, and trustees shall have full power to sell so much of the property of the decedent as will enable them to pay said tax, in the same manner as they may be enabled by law to do for the payment of debts of the estate, and the amount of said tax shall be paid as hereinafter directed.

"3. Every sum of money retained by an executor, administrator, or trustee, or paid into his hands, for any tax on property, shall be paid by him, within thirty (30) days thereafter, to the state tax commission."

2. Heretofore, seven states have followed the view of the majority in this case, while two states are in accord with my views. Annot., 69 A.L.R.3d 122, § 44.