577 P.2d 798

Wanek R. STEIN, Personal Representative of Estate of E. Wanek Stein, Deceased, Plaintiff-Respondent,

v.

IDAHO STATE TAX COMMISSION, Defendant-Appellant.

No. 12471.

Supreme Court of Idaho.

April 24, 1978.

Dean W. Kaplan, Asst. Atty. Gen., Wayne L. Kidwell, Atty. Gen., for defendant-appellant.

William L. Vasconcellos of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for plaintiff-respondent.

SHEPARD, Chief Justice.

This is an appeal from a summary judgment entered by the district court, which in turn was an appeal from the Idaho State Tax Commission. The sole question is the valuation of certain U. S. Treasury bonds for the purpose of state inheritance tax determination. The appellant Tax Commission contends the determination should be on the basis of the par value of the bonds, and the respondent taxpayer asserts that the district court was correct in making such determination based on the open market value.

The decedent E. Wanek Stein died testate on August 14, 1973. Among the assets of his estate were U. S. Treasury bonds with a par value of $300,000, which Stein had purchased three weeks before his death. Those bonds are described only as "U. S. Treasury bonds[,] 3½% due 11/15/1998." Clk. Tr. 44. Those bonds evidently are Series G or H government savings bonds, commonly called "flower" bonds. It is stipulated that they may be redeemed in payment of federal estate taxes following the death of their holder, and when so used are redeemed at par value. It is also undisputed in the instant case that those bonds, if sold on the open market, would command a price substantially less than their par value.

On February 13, 1974, the personal representative of the estate, Wanek R. Stein,

filed with the Idaho State Tax Commission a transfer and inheritance tax return which was marked "estimated." That return placed the value of the bonds at their purchase price, which was $221,450.00. As of the date of death, the estimated market value of the bonds was $209,813.00.

In January 1976 the Tax Commission ascertained that 72 percent of the bonds had been redeemed at par value in payment of federal estate taxes. The Commission therefore raised the valuation of that portion of the bonds to par value for purposes of state inheritance tax. A notice of deficiency was sent, which was in part paid, but objection was made to the revaluation of the bonds used to pay the federal estate taxes. The personal representative filed a complaint in the district court seeking a redetermination of the deficiency as asserted by the Tax Commission. Upon motion therefor, summary judgment was entered in favor of the personal representative.

Although a procedural issue is presented as to the time within which the Tax Commission may make a deficiency determination, we do not reach that issue since our affirmance of the district court's definition of the fair market value of the bonds is dispositive of the appeal.

■ Taxation of U. S. Treasury bonds under our inheritance tax statutes must be based on their fair market value. *See* I.C. §§ 14–402–418. The Commission asserts that because the bonds in the instant matter had a unique characteristic allowing them to be redeemed at par value for federal estate tax purposes, such a redemption requires their fair market value to be placed at par value. Regulation 402(a) of the Tax Commission requires a valuation as argued by the Commission here, however, it is conceded that said regulation was not in effect at the time of decedent's death. The Commission argues, nevertheless, that such regulation somehow provides a guideline as to the legislative intent in the enactment of I.C. § 14–402. We do not agree.

The construction of the statutory term "fair market value" by the Commission's Regulation 402(a) is not necessarily the only

construction of the statute nor does it comport with the clear meaning of the statute. Courts of various jurisdictions have disagreed in cases such as the one at bar. Illinois, Montana, Oregon and West Virginia support the holding of the district court. *See, e. g., In re Estate of Barker,* 24 Ill. App.3d 959, 321 N.E.2d 709 (1974); *In re Estate of Power,* 156 Mont. 100, 476 P.2d 506 (1970); *Department of Revenue v. First Nat'l Bank,* 4 Or.App. 477, 479 P.2d 256 (1971); *Aul v. Haden,* 154 W.Va. 484, 177 S.E.2d 142 (1970). The courts of California, New York, North Dakota, Ohio and Washington support the position taken by the Tax Commission here. *See, e. g., In re Estate of Rosenfeld,* 62 Cal.2d 432, 42 Cal. Rptr. 447, 398 P.2d 783 (1965); *In re Estate of Behm,* 14 N.Y.2d 826, 251 N.Y.S.2d 475, 200 N.E.2d 457 (1964); *Clapp v. Cass County,* 236 N.W.2d 850 (N.D.1975); *In re Estate of Young,* 16 Ohio Misc. 332, 243 N.E.2d 123 (1969); *In re Estate of Eggert,* 82 Wash.2d 332, 510 P.2d 645 (1973).

■ We hold that the U. S. Treasury bonds have a value for inheritance tax purposes determined by the open market at the time of death; *i. e.,* "the price which a buyer willing but not obliged to buy would pay a seller willing but not obligated to sell, both having full knowledge of all pertinent facts affecting value." *In re Estate of Power,* 476 P.2d at 507–08. A grisly bargain is struck between the federal government and the owner of the bonds, since the only way in which the owner can obtain their par value is to die. Thereafter value for the bonds may only be obtained in payment of federal estate taxation. Living owners of such bonds cannot obtain their par value from the government. Hence, a redemption following the death of the owner in payment of federal estate taxes is not a sale on the open market. Further, since the federal tax commissioner is required to redeem such bonds at their par value when offered in payment of federal estate taxes, the U. S. government is not a willing buyer.

No rational public policy would be served by placing a different value on U. S. Treasury bonds as contrasted with other person-

al property. Both must be assigned their open market value. Although the death of the decedent enhanced the value of the bonds to his estate, it did not change their value on the open market. Heirlooms and other personal property with unique characteristics may have enhanced value to certain persons, but they are nevertheless valued according to the open market value, and the bonds in the instant case are no different. Judgment of the district court is affirmed. Costs to respondent.

McFADDEN, DONALDSON and BIST-LINE, JJ., concur.

BAKES, Justice, dissenting:

I cannot concur in the majority's holding that "flower bonds" which are credited against federal estate tax liability at their par value should nevertheless be appraised for state inheritance tax purposes at their substantially lower value on the so called "open market." The Court's decision here is glaringly inconsistent with our decision in *Estate of Morrison v. Idaho State Tax Commission,* 98 Idaho 766, 572 P.2d 869 (1977). *Morrison* indicates that either party in a dispute over the value of property for tax purposes is free to prove that actual market forces operate to increase or decrease the value of the property in comparison to generally accepted price quotations. Alternatively, I believe that any advantage attributable to appraising the bonds at their quoted rather than par value is cancelled out when the deduction allowable for federal estate taxes is computed.

In *Morrison,* the estate maintained that a large block of stock should be valued for inheritance tax purposes at a per share value beneath the price quoted on the over-the-counter market. The estate argued that the reduced value was appropriate under the "blockage" rule. That rule is premised upon an assumption that very large blocks of stock must be sold at a discount because the market cannot absorb an inordinate number of shares at the going price. The question before the Court was whether a blockage rule properly could be applied to valuation of stock for inheritance tax purposes.

In answering the question presented in *Morrison,* we began by recognizing that I.C. § 14–402—the same statute involved in this case—imposed a tax upon the market value of property and that the propriety of applying a blockage rule depended upon the definition of market value. We said that "[o]rdinarily market value is defined as the price at which a hypothetical seller, desiring to sell the property but being under no compulsion to do so, and a hypothetical buyer, desiring to buy the property but being under no compulsion to do so, would agree to exchange the property." 98 Idaho at 770, 572 P.2d at 873. We pointed out that the blockage rule "assumed that there would be no ready market for larger blocks of stock, and thus the price must be discounted." *Id.* However, we observed that that assumption was not invariably true, since various other market forces could operate to make large blocks of stock salable at a premium, rather than obliging the seller to discount his shares. We then stated the following rule, concurred in by all members of the Court:

> "[W]here one party or the other has shown that there are market forces which would increase or decrease the selling price per share for large blocks of stock from that for lesser blocks of stock commonly traded, the finder of fact may take into account these market forces in arriving at market value. However, the presence of such market factors may not be presumed, and in the absence of proof of such factors the general definition of market value, which assumes both a willing seller and a willing buyer, must control." *Id.* at 771, 572 P.2d at 874.

In this case, the majority's rigid concept of market value flies in the face of our working definition of that term in *Morrison.* Here, the majority holds that the value of the flower bonds is "determined by the open market at the time of death; *i. e.,* 'the price which a buyer willing but not obliged to buy would pay a seller willing but not obligated to sell.'" *Ante* at 799. This closely resembles what we referred to

in *Morrison* as "the *general* definition of market value." 98 Idaho at 771, 572 P.2d at 874 (emphasis supplied). However, contrary to our teaching in *Morrison* that this definition should control only "in the absence of proof of [other market forces]," *id.,* the majority makes the definition conclusive and absolute—despite the uncontroverted fact that there was a market for these flower bonds at par value. *Morrison* establishes that either party in a dispute over the value of property for tax purposes may prove that actual market forces operate to increase or decrease the value of the property as compared with prices quoted in trade publications or the like. The majority ignores that part of the *Morrison* holding.

In the case before us, it is undisputed that the federal government redeemed at par value a substantial portion of the flower bonds in the Stein estate. These bonds were worth significantly less than par value if sold on what the majority refers to as "the open market." *Ante* at 798–800. The majority says that the federal government's redemption at par value is not relevant to the value of the bonds for tax purposes because "a redemption following the death of the owner in payment of federal estate taxes is not a sale on the open market" and because "the U. S. government is not a willing buyer." *Ante* at 799. Arguably, the notion of a willing buyer seeking to purchase property on the open market is a component of the hypothetical transaction that is posited by the general definition of market value. However, this is no reason to ignore the uncontested fact that a particular party is legally obliged to pay a certain sum for these bonds in the estate. A seller in the marketplace does not ignore an offer to purchase simply because the one who makes it is legally compelled to do so or because payment will take the form of a credit against the seller's indebtedness to the buyer. Nor should our tax system be blinded to the reality of such a force in the market. This is precisely the sort of market factor that *Morrison* permits a party to prove.

The majority says that "[n]o rational public policy would be served by placing a different value on U. S. Treasury bonds as contrasted with other personal property." *Ante* at 799. I agree. Therefore, just as the value of a large block of stock in a private corporation may be determined by evidence of market factors proven to affect the salability of the block, *Estate of Morrison v. Idaho State Tax Comm'n,* 98 Idaho 766, 572 P.2d 869 (1977), so too the value of the U. S. Treasury bonds involved here should be assessed in light of the federal government's proven obligation to redeem them at par value.

While it is perhaps too late to rectify in this case, there is another reason why the result reached here is wrong. It appears that the estate is enjoying a deduction under Idaho's inheritance tax laws of some $217,000 for federal estate taxes. However, the estate satisfied its federal estate tax liability with flower bonds that the majority has held may properly be appraised for inheritance tax purposes at the price Stein paid for them on the over-the-counter market—approximately $159,444. The result is that the estate succeeds in playing both ends toward the middle. I do not think our inheritance tax law permits this.

I.C. § 14–402(10)(e) provides that in determining the market value of the property subject to Idaho's inheritance tax, "[t]he amount *due or paid* the government of the United States as a federal inheritance or estate tax" is to be deducted from the appraisal value of the property. (Emphasis supplied.) If, at the estate's insistence, the flower bonds are valued at their worth on the open market for purposes of appraising the property subject to Idaho's inheritance tax, then of course they must be given exactly the same value for purposes of calculating the deduction allowed for federal estate taxes. Thus, while the amount of federal estate taxes *due* from Stein's estate may have been $217,000, the amount actually *paid* by the estate was only about $159,-444.

Subsection 14–402(10)(e) does not say what deduction shall be allowed if the amount due and the amount paid are differ-

ent. While the Congress of the United States may have intended to create a federal estate tax loophole by providing that certain bonds be redeemed at par value in satisfaction of those taxes—presumably in order to increase the attractiveness to investors of the low interest federal bonds—there is no indication that Idaho's legislature intended a similar loophole in this state's inheritance tax laws, particularly since Idaho has no interest in facilitating the marketability of federal bonds. Indeed, as Justice Shepard wrote in *Leonard Construction Co. v. State ex rel. State Tax Commission,* 96 Idaho 893, 896, 539 P.2d 246, 249 (1975), "It has been oft stated that tax exemptions existing only by legislative grace are to be strictly construed against the party claiming the exemption." Consequently, I would construe our statute to grant a deduction for the *lesser* of either the amount due or the amount ultimately paid. Hence, the result of undervaluing redeemable flower bonds would amount to a wash.